Argued and submitted March 5, 1985, Tax Court decision reversed April 1,
reconsideration allowed by opinion April 22, 1986
See 301 Or 242 (1986)

ATLANTIC RICHFIELD COMPANY,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
*Respondent.*

(TC 2001; SC S30995)

Samuel B. Stewart, Judge.

Henry C. Breithaupt, Portland, argued the cause for appellant. With him on the briefs were Robert S. Wiggins and Stoel, Rives, Boley, Fraser & Wyse, Portland.

Elizabeth S. Stockdale, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was Dave Frohnmayer, Attorney General, Salem.

Maurice O. Georges and John D. Burns of Miller, Nash, Wiener, Hager & Carlsen, Portland, and Paul K. Lester and William D. Peltz, Houston, Texas, filed brief for Shell Oil Company as *amicus curiae.*

PETERSON, C. J.

## PETERSON, C. J.

Taxpayer Atlantic Richfield Corporation is a Pennsylvania corporation with its principal place of business in California. It is qualified to do and does business in Oregon and elsewhere in the United States. For tax years 1973 through 1977, taxpayer filed Oregon corporate excise tax returns with the defendant Oregon Department of Revenue. Taxpayer reported its net income from business activity both within and without Oregon. The question in this case is how much of that income is attributable to taxpayer's business activities in Oregon.

ORS 314.615 provides that "[a]ny taxpayer having income from business activity which is taxable both within and without this state * * * shall allocate and apportion the net income of the taxpayer as provided in ORS 314.605 to 314.675." ORS 314.650 through 314.670 are the relevant apportionment statutes. They list and define three factors — property, payroll and sales — to be included in a fraction which, when multiplied by the total net business income, gives a figure representing that portion of total net business income attributable to and taxable in Oregon.

To illustrate the issue that brings the parties here: Suppose a taxpayer has multistate net business income of $100,000 and the property factor[1] is 3/8 (.375), the payroll factor[2] is 5/9 (.555), the sales factor[3] is 1/3 (.333). The ORS 314.650 formula would be:

$$\$100,000 \times \frac{(.375 + .555 + .333)}{3} = \frac{100,000 \times 1.263}{3} =$$

$$\frac{\$126,300}{3} = \$42,100 \text{ Oregon income.}$$

---

[1] ORS 314.655(1) provides that the property factor is a fraction. The numerator is "the average value of the taxpayer's real and tangible personal property * * * in this state during the tax period." The denominator is "the average value of all the taxpayer's real and tangible personal property * * * during the period." As will be more apparent below, the effect of expensing intangible drilling and development costs was to decrease the denominator and thereby increase the property factor and, consequently, the amount of Oregon tax.

[2] ORS 314.660(1) defines the "payroll factor" as a fraction. The numerator is the in-state payroll; the denominator is total payroll everywhere.

[3] ORS 314.665(1) defines the "sales factor" as a fraction. The numerator is total in-state sales; the denominator is total sales everywhere.

Changing the factors in the numerator of the fraction of the ORS 314.650 formula (the denominator is a constant, three) affects the determination of income attributable to Oregon. All else being equal, a larger property factor fraction results in a greater Oregon tax liability, a smaller property factor fraction results in a lesser Oregon tax liability. For example, if the property factor in the above example were 5/8 (.625) rather than 3/8 (.375), the Oregon income would be $50,433.33. If the property factor were 1/8 (.125), the Oregon income would be $33,766.66.

ORS 314.655(2) provides that property of a multi-state taxpayer is to be valued at its "original cost" in determining the property factor. Taxpayer included intangible drilling and development costs (IDCs),[4] which taxpayer had elected to "expense"[5] for the purpose of determining federal net income,[6] in the calculation of its Oregon property factor as part of the "original cost" of its property.

On audit, the department asserted a deficiency with respect to each Arco return. The department held that "original cost," for the purpose of determining the property factor, meant the federal unadjusted tax basis of the property.[7] Expensed IDCs are not included in the federal unadjusted tax basis of oil or gas wells. Taxpayer argues that although

---

[4] IDCs include costs for such items as wages, fuel, repairs, hauling and supplies incurred in the development of producing oil or gas wells. IRC § 263(c); Treas. Reg. § 1.612-4(a).

[5] The term "expense" in the context of determining net income is used as a verb to refer to expenditures related to the production of income that may be deducted from gross income in the year incurred, for an accrual method taxpayer, or year paid, for a cash method taxpayer. Amounts "expensed" normally do not enter the tax basis for the item on account of which the expenditure was made. Amounts capitalized, on the other hand, generally are those expended for long term betterments and improvements made to increase the value of any property or estate. See IRC § 263(a). No deduction from gross income is allowed for such capital expenditures, and the tax basis of the property is increased by the amount capitalized.

[6] IRC section 263(c) provides that "[n]otwithstanding subsection (a), regulations shall be prescribed * * * [granting] the option to deduct as expenses intangible drilling and development costs in the case of oil and gas wells * * *." Treasury Regulation section 1.612-4 sets forth the provisions regarding the option to capitalize or expense IDCs. Recent changes in the federal tax law require that, for tax years after 1982, at least 15 percent of IDCs be capitalized. IRC § 291(b).

[7] The federal tax basis of property is generally "the cost of the property." IRC § 1012; see also IRC §§ 1013-15. IRC section 1016 provides for adjustments to basis. The election to expense IDCs does not result in an adjustment to federal tax basis. Treas. Reg. § 1.1016-2(a).

"original cost" under ORS 314.655(2) generally means federal unadjusted tax basis, the general rule should not apply in this case, but rather an exception should be recognized to permit expensed IDCs to be included in the original cost and in the property factor of the apportionment formula.

Both parties moved for summary judgment. The Tax Court agreed with the department and granted summary judgment against taxpayer, 9 OTR 451 (1984). We reverse.

Oregon's Uniform Division of Income for Tax Purposes Act, ORS 314.605 to 314.670 (UDITPA), was adopted in 1965 (Or Laws 1965, ch 152) from Section IV of the Multistate Tax Compact which contains the uniform act. The uniform act was drafted as a practical means of assuring that no multistate taxpayer was taxed on more than its total net income. *See* 7A Uniform Laws Annotated, Uniform Division of Income for Tax Purposes Act 331-32 (1985) (Prefatory Note); Lynn, *Formula Apportionment of Corporate Income for State Tax Purposes,* 18 Ohio St L J 84 (1957); Pierce, *Uniform Act, Practical Method to Lighten State Compliance Burden,* 12 J Tax'n 83 (1960).

Uniformity among adopting jurisdictions is the general purpose of UDITPA. ORS 314.605(2) provides:

"ORS 314.610 to 314.670 shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it."[8]

We recently observed in *Twentieth Century-Fox Film v. Dept. of Rev.,* 299 Or 220, 227, 700 P2d 1035, 1039 (1985), that UDITPA has two basic goals: "[F]air apportionment of

---

[8] Article I of the Multistate Tax Compact, enacted into law in ORS 305.655, provides:

"The purposes of this compact are to:

"1. Facilitate proper determination of state and local tax liability of multistate taxpayers, including the equitable apportionment of tax bases and settlement of apportionment disputes.

"2. Promote uniformity or compatibility in significant components of tax systems.

"3. Facilitate taxpayer convenience and compliance in the filing of tax returns and in other phases of tax administration.

"4. Avoid duplicative taxation."

income among the taxing jurisdictions; and * * * uniformity of application of the statutes." (Footnote omitted.)

ORS 314.650 contains the basic income apportionment formula, including a multiplier designed fairly to reflect the portion of a multistate taxpayer's total business income attributable to its Oregon activities or holdings.[9] ORS 314.615 provides:

"* * * Any taxpayer having income from business activity which is taxable both within and without this state, other than activity as a financial organization or public utility or the rendering of purely personal services by an individual, shall allocate and apportion his net income as provided in ORS 314.605 to 314.675. * * *"

ORS 314.650 provides:

"All business income shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three."

Only the property factor is at issue here. ORS 314.655 provides:

"(1)  The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in this state during the tax period and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used during the tax period.

"(2)  Property owned by the taxpayer is valued at its original cost.* * *"

Nowhere in UDITPA or in any applicable Oregon statute is "original cost" defined. The Commissioner's comment to Section 11 of the Uniform Act, the section that is the source of ORS 314.655(2), states:

"This section is admittedly arbitrary in using original cost rather than depreciated cost * * *. This approach is justified because the act does not impose a tax, nor prescribe the depreciation allowable in computing the tax, but merely provides a basis for division of the taxable income among the several states. The use of original cost obviates any differences

---

[9] These provisions apply only to the income of corporations and nonresident individuals. ORS 314.695.

due to varying methods of depreciation, and has the advantage that the basic figure is readily ascertainable from the taxpayer's books. No method of valuing the property would probably be universally acceptable." 7A Uniform Laws Annotated, Uniform Division of Income for Tax Purposes Act 350, § 11 (1985).

ORS 314.815 grants rulemaking authority to the department. It provides:

"The department may, from time to time, make such rules and regulations, not inconsistent with legislative enactments, that it considers necessary to enforce income tax laws."

In 1973 the department promulgated OAR 150-314.655(2)-(A). The rule was drawn from the model rules proposed by the Multistate Tax Commission, MTC Reg IV. 11.(a), and provides:

"Property owned by the taxpayer shall be valued at its original cost. *As a general rule 'original cost' is deemed to be the basis of the property for federal income tax purposes (prior to any federal adustments) [sic] at the time of acquisition by the taxpayer and adjusted by subsequent capital additions or improvements thereto* and partial disposition thereof, by reason of sale, exchange, abandonment, etc." (Emphasis added.)

Taxpayer does not dispute the validity of this general rule. The Tax Court held that it was valid. The dispute arises from the application of the "general rule" to the facts of this case. The fact that the rule expressly applies generally as opposed to universally implies the presence of exceptions.[10] The department has not promulgated rules more specifically defining any exceptions.

Under federal income tax law, taxpayers who incur IDCs may elect either to expense or capitalize the IDCs. IRC §

---

[10] The department understood its task. Its order states:

"* * * The language of the rule specifically notes that the determination of original cost according to basis is done only as a *general rule.* Language of a general rule inherently indicates the presence of exceptions. * * *.

"OAR 150-314-655(2)-(A) therefore does not automatically preclude IDCs from inclusion in the property factor. The question which naturally follows is whether petitioner has made a case for their inclusion.

263(c), Treas. Reg. § 1.612-4.[11] If the taxpayer elects to capitalize the IDCs they are included in the taxpayer's federal unadjusted basis. If a taxpayer elects to expense IDCs, the costs are not. Thus, two taxpayers with the same expenditures in Oregon (or in any other state) properly may elect to be treated differently in their federal income tax calculations.

As stated, taxpayer expensed its IDCs. That election determined the federal income tax characterization of the IDCs as other than capital assets. The election did not result in a federal adjustment to the tax basis of the property for whose development the IDCs were incurred. *See* Treas. Reg. § 1.1016-2(a).[12]

We first consider our scope of review. There are no disputed facts in this case. Although we review factual matters *de novo*, ORS 305.445, ORS 19.125(3), *see Oregon Broadcasting Co. v. Dept. of Revenue,* 287 Or 267, 270-71, 598 P2d 689, 692 (1979), the issue before us is whether the department and the Tax Court correctly applied the rule to the undisputed facts.

The Department of Revenue is a state agency. Unlike most state agencies, however, the provisions of the Administrative Procedures Act for appellate review of agency orders "do not apply to the Department of Revenue." ORS 183.315(1).

■    In determining whether the department properly applied its rule, and consistent with the "fairness" and "uniformity" goals referred to in *Twentieth Century Fox v. Dept. of Rev., supra,* we believe the applicable rule to be this: The Department's determination that the exception does not

---

[11] IRC section 291(b), *see* note 3, *supra,* changed only the percentage of IDCs subject to election under IRC section 263(c), not the effect of making the election.

[12] Treasury Regulation section 1.1016-2(a) provides:

"The cost or other basis shall be properly adjusted for any expenditure, receipt, loss, or other item, properly chargeable to capital account, including the cost of improvements and betterments made to the property. No adjustment shall be made in respect of any item which, under any applicable provision of law or deduction in computing net or taxable income for the regulation, is treated as an item not properly chargeable to capital account but is allowable as a deduction in computing net or taxable income for the taxable year. For example, in the case of oil and gas wells no adjustment may be made in respect of any intangible drilling and development expense allowable as a deduction in computing net or taxable income. See the regulations under section 263(c)."

apply will be upheld if (1) the application of the formula by the department reasonably approximates the taxpayer's income in Oregon, and (2) the application of the rule by the department "effectuates [the] general purpose to make uniform the law of those states which enact [UDITPA]." ORS 314.605(2).[13]

## REASONABLENESS

Arguments favoring inclusion of IDCs in the property factor include these:[14]

1. IDCs are incurred in the creation of real or tangible property.

2. Even if the costs pertain to intangibles, the costs are incorporated within the oil or gas well just as intangible costs associated with the construction of a building become part of the basis of the building.

3. The expensing of IDCs represents a "federal adjustment" under the "original cost" concept; therefore, the expensed costs remain part of the original cost of the well.

---

[13] Compare the declaration of the rule in the department's order:

"* * * [T]he criteria to be applied is not whether another formula is reasonable, but whether the formula chosen by respondent is reasonable. Respondent need not demonstrate a [sic] exact apportionment. It is enough that its methods demonstrate a reasonable approximation. * * *."

"At least two possible situations could demonstrate respondent's rule to be unreasonable. The first deals with uniformity. The primary concern of UDITPA is to apportion the income of multistate and multinational corporations among the states in a consistent manner. If a majority of jurisdictions were including IDCs within the property factor, this guideline would be a strong argument for change. However, petitioner has not demonstrated this to be the case. Its silence on the issue is a strong argument for retaining the present practice."

"Respondent's formula would also be unreasonable if it produced distortion. However, petitioner has failed to show that the apportionment formula which includes from the property factor the intangible development and drilling cost is arbitrary or in error. Therefore, the adjustment made by the Audit Division is proper and sustained."

[14] In listing the pro and con arguments we have drawn upon two articles in the Spring 1978 issue of The Urban Lawyer. One is by Eugene F. Corrigan, Executive Director of the Multistate Tax Commission. *See* Corrigan, *Proposed Multistate Tax Commission Revenue Ruling on Intangile Drilling Costs Under Article IV of the Multistate Tax Compact,* 10 The Urb Law 237 (1978). The other article is by Steven S. Bronson, Staff Counsel of the California Franchise Tax Board. *See* Bronson, *Treatment of Expensed Intangible Drilling and Development Costs for Purposes of the Property Factor of the Multistate Tax Commission's Apportionment Formula,* 10 The Urb Law 224 (1978).

4. Because IDCs constitute such a large percentage of the total cost of a producing well, principles of equitable apportionment require the costs to be included in the property factor.

Arguments favoring exclusion of expensed IDCs from the property factor include these:

1. IDCs are not inherently capital costs analogous to other types of intangible building costs.

2. No possibility of creating any imbalance among the apportionment factors themselves exists, because the property, payroll and sales factors are weighed equally within the formula.

Each of the four "pro" points mentioned earlier have validity, whereas the two "con" premises to us seem suspect. IDCs may not be "inherently capital costs", but they are either identical to or remarkably similar to those costs that normally are included in the basis of tangible property. Relative to the argument that "no possibility of creating any imbalance among the apportionment factors themselves exists, because the property, payroll and sales factors are weighed equally within the formula * * *", that is incorrect, for the payroll fraction itself may have a significant impact upon the result. *See* 300 Or at 640.

Even so, we do not say, as a matter of law, that excluding IDCs from the payroll factor would not reasonably approximate the taxpayer's income in Oregon. Although Mr. Corrigan has the more convincing argument, Mr. Bronson's points give us pause. *See* note 11, *supra.* In view of the holding below on the "uniformity" question, we do not base our decision on the "reasonableness" prong of the rule. We therefore turn to the "uniformity" issue.

## UNIFORMITY

If we were the first state to address this question, we likely would affirm the department and the Tax Court, for the department has some latitude in interpreting the phrase "original cost" in ORS 314.655(2). *See Trebesch v. Employment Division,* 300 Or 264, 710 P2d 136 (1985); *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980). It appears, however, that those UDITPA jurisdictions that have considered the IDC question by rule or statute (no

court or administrative decisions to the contrary have been cited to us) require that IDCs be included in the property factor. The department has not invited our attention to any decision concerning any UDITPA jurisdiction's counterpart of OAR 150-314-655(2)-(A) that reaches a contrary result.

Taxpayer points to Alaska as an MTC and UDITPA jurisdiction that, in allocating net income, treats all IDCs, whether capitalized or expensed, as if they had been capitalized and therefore included in the property factor. After oral argument in this court, *amicus* submitted authorities listing three additional MTC and UDITPA states that purportedly adopted similar rules.

Of these three additional states which now require or allow inclusion of all IDCs in the property factor, Nebraska has done so by statute, Neb. Rev. Stat. § 77-2734.10(5) (signed into law May 17, 1985; effective for tax years beginning on or after January 1, 1985), while North Dakota and Utah have done so by agency regulation, North Dakota Income Tax Regulation 81-03-09-21.1 (adopted July 1, 1985); Utah Income Tax Regulation A12-02-F8(5)(b) (adopted July 15, 1985, effective for tax years beginning on or after January 1, 1985).

*The statutes: Alaska and Nebraska*

Alaska is both an MTC and UDITPA state. Alaska Statutes section 43.20.072, the statute dealing with IDC treatment for apportionment, provides in pertinent part:

"Sec. 43.20.072. **Oil and gas producers and pipelines.** (a) All business income of a taxpayer engaged in the production of oil or gas from a lease or property in this state or engaged in the transportation of oil or gas by pipeline in this state shall be apportioned to this state in accordance with the Multistate Tax Compact (AS 43.19) as modified by this section.

"(b) A taxpayer's business income to be apportioned under this section to the state shall be the federal taxable income of the taxpayer's consolidated business for the tax period, except that

"* * * * *.

"(2) intangible drilling and development costs that are deducted as expenses under 26 U.S.C. 263(c) (Internal Revenue Code) in the determination of the federal taxable

income shall be capitalized and depreciated as if the option to treat them as expenses under 26 U.S.C. 263(c) (Internal Revenue Code) had not been exercised;

"* * * * *."

This provision does not merely require inclusion of IDCs in the determination of the property factor regardless of taxpayer election under IRC section 263(c). Instead, the statute requires expensed IDCs to be capitalized and depreciated "as if the election [to expense] had not been exercised," for the purpose of determining taxable income. *See* Alaska Stat § 43.20.072(b)(1). All Alaska taxpayers are required to capitalize all IDCs for the purpose of determining Alaska taxable income, which would eliminate any difference in the taxable income between taxpayers based on IRC section 263(c) election. The effect of Alaska Statute section 43.20.072(b) is to require all IDCs to be added into the property factor and to deny the expense deduction election under IRC section 263(c) in determining the net taxable income to be apportioned to the state.

Nebraska Revised Statute section 77-2734.10(5), signed into law May 17, 1985 (effective for tax years beginning on or after January 1, 1985), provides:

"The factors computed pursuant to sections 77-2734.05 to 77-2734.15 [UDITPA] *shall be adjusted* in the following situations:

"* * * * *.

"(5) The property factor shall include the intangible drilling costs incurred on property that is owned or rented and used during the tax period; * * *." (Emphasis added.)

Similar to the Alaska statute, the Nebraska provision adjusts the property factor as computed under the basic UDITPA apportionment formula.

### The Regulations: Utah and North Dakota

The administrative rules of Utah and North Dakota, both MTC and UDITPA jurisdictions, unlike the Alaska and Nebraska statutes discussed above, are interpretations of the basic UDITPA statutory property factor formula.

Utah Income Tax Regulation A12-02-F8(5)(b), effective for tax years beginning on or after January 1, 1985, provides:

"Property Factor: Property Used for the Production of Business Income. — Property shall be included in the property factor if it is actually used or is available for or capable of being used during the tax period in the regular course of the trade or business of the taxpayer. * * *.

"* * * *Intangible drilling costs on producing property or property available for use shall be included in the property factor.*" (Emphasis added.)

North Dakota Income Tax Regulation 81-03-09-21.1, adopted July 1, 1985, provides:

"Property factor - *Intangible drilling costs. Intangible drilling and development costs incurred by oil and gas producing companies in connection with oil and gas properties must be included in the property factor.* Intangible drilling and development costs include such elements as wages, fuel, repairs, hauling, draining, road building, surveying, geological works, construction of derricks, tanks, pipelines, and other physical structures necessary for the drilling of wells and their preparation for the production of oil and gas, and supplies incident to and necessary for the drilling of wells and clearing of ground.

"The amount to be included in the property factor is the amount capitalized for financial reporting purposes using the successful effort accounting method. *An election to expense intangible drilling costs for federal income tax purposes has no effect on their inclusion in the property factor.*

"* * * * *." (Emphasis added.)

Thus, at least four of the 25 UDITPA jurisdictions[15] have provisions allowing or requiring all IDCs to be computed into the property factor. Two of these jurisdictions, Alaska and Nebraska, have modified the basic UDITPA formula by statute. In the other two jurisdictions, Utah and North Dakota, a similar result was obtained through administrative

---

[15] The 1985 edition of 7A, Uniform Laws Annotated, Uniform Division of Income for Tax Purposes Act 331 (1985), lists 25 UDITPA jurisdictions. Five UDITPA jurisdictions, Arizona, Kentucky, Maine, Minnesota and South Carolina, have not joined the Multistate Tax Compact.

rulemaking, interpreting the basic UDITPA property factor to include all IDCs.

When the department and the Tax Court decisions were made, the actions of the other states discussed above were not apparent.[16] Even so, because uniformity is a predicate for UDITPA's success, we believe that we must consider the statutes and rules discussed above. In the absence of any indication that other UDITPA states apply ORS 314.655(2) as did the department and Tax Court, and in order to meet the UDITPA "uniformity" criterion, we hold that IDCs should be included in "original cost."

## CONCLUSION

We therefore reverse the Tax Court and remand for the entry of judgment consistent with this opinion.[17]

---

[16] The Tax Court opinion stated:

"The primary goals of UDITPA are consistency and uniformity. The plaintiff presented no evidence that other states operating under UDITPA, except for Alaska, include IDCs in the property factor calculation. Therefore, the defendant's interpretation and application of its rule to IDCs is consistent with UDITPA's goal of uniformity and the expressed statutory purpose noted above."

[17] We hold that IDCs must be included in the property factor. We make no decision concerning IDCs incurred in drilling offshore or in other countries. See page 6 of the department's opinion and order. The Tax Court can decide any further issues raised by this decision.