30                    September 17, 2012                    No. 4

## IN THE OREGON TAX COURT
## REGULAR DIVISION

POWEREX CORP.,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4800)

Plaintiff (taxpayer) appealed Defendant (the department)'s assessment of tax, and the department's position that revenues from taxpayer's electricity sales are sales of tangible personal property and that the revenues from such sales can be sourced in Oregon and included in the numerator of the Oregon sales factor used for apportionment of taxpayer's income. Taxpayer argued that electricity is other than tangible personal property and that because the greatest portion of the costs of its income producing activity related to the sales of electricity were incurred at its office and trading location in Canada, the revenue from taxpayer's sales of electricity cannot be sourced in Oregon under ORS 314.665(4). Ruling for taxpayer, the court found that given the nature of electricity, and the positions of the MTC and other UDITPA states, the sale of electricity is a sale other than a sale of tangible personal property.

Trial was held September 12 and 13, 2011, in the courtroom of the Oregon Tax Court, Salem.

Eric J. Coffill, Morrison & Foerster LLP, Sacramento, argued the cause for Plaintiff (taxpayer) *pro hac vice*.

Marilyn J. Harbur, Senior Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision for Plaintiff rendered September 17, 2012.

**HENRY C. BREITHAUPT, Judge.**

### I.   INTRODUCTION

This matter is before the court after a trial. Certain facts have been stipulated by the parties. The tax at issue is the corporate income tax and the years at issue are the years ending March 31, 2002, March 31, 2003, and March 31, 2004.

## II.   FACTS

Plaintiff (taxpayer) is a company headquartered in Vancouver, British Columbia. Plaintiff is wholly owned by British Columbia Hydro and Power Authority, a Provincial Crown Corporation (BC Hydro). Taxpayer sells electricity, generated by BC Hydro, at wholesale to many customers. In some cases, the sales contracts specify a contractual point of delivery that is within Oregon, typically at a substation that is part of a large transmission system. The electricity delivered in such cases is further transmitted to users, most of whom are not in Oregon.

The court finds as a matter of fact, based on the testimony and other record made in this case, that the majority of the costs incurred by taxpayer in carrying on the income producing activity of its wholesale electricity sales business are incurred in British Columbia. That record includes evidence from taxpayer as to direct costs incurred in British Columbia in connection with the sales in question and an absence of evidence from Defendant Department of Revenue (the department) that direct costs of performance of the transactions giving rise to the transactions in question occurred at any other location.

Taxpayer also sells natural gas at wholesale. Again, the contractual delivery point for some of those sales is in Oregon. However, the record establishes that none of the actual purchasers of natural gas sold by taxpayer are located in Oregon. Rather, the natural gas is sold by taxpayer and further transmitted from the contractual point of delivery to the ultimate user.

The department has asserted that the revenues from the electricity sales of taxpayer are sales of tangible personal property. If that is the case, the revenues from such sales could be sourced in Oregon and included in the numerator of the Oregon sales factor used for apportionment of the income of taxpayer depending on the application of other statutory rules relating to the location of the purchaser. *See* ORS 314.665(2).[1]

---

[1] All references to the Oregon Revised Statutes (ORS) are to the 2001 edition.

Taxpayer argues that electricity is other than tangible personal property. Based on that position, taxpayer further argues that because the greatest portion of the costs of the income producing activity related to the sales of electricity are incurred at its office and trading location in Canada, the revenue from the sales of electricity cannot be sourced in Oregon under ORS 314.665(4).

Taxpayer accepts the conclusion of the department that natural gas is tangible personal property. However, as to the natural gas, taxpayer points out that all purchasers of such gas involved in this case are located outside the state of Oregon. The record does not disclose directly whether the purchasers are the ultimate end users of the gas covered by the sales agreements. However, the record supports an inference that those who purchase gas from taxpayer sell the gas on to others. Taxpayer argues that because the location of its purchaser is outside Oregon, its sales of gas cannot be considered to have occurred in this state under ORS 314.665(2).

## III.   ISSUES

Given the finding of the court as to the proportion of the income producing activity occurring in Oregon with respect to taxpayer's sales of electricity, the issues for decision are:

(1)   Is the sale of electricity the sale of tangible personal property or a sale other than a sale of tangible personal property?

(2)   Are taxpayer's sales of natural gas made in Oregon or at the location of the ultimate user of the natural gas? If, but only if, electricity is tangible personal property, the same issue exists as to taxpayer's sales of electricity.

## IV.   ANALYSIS

The trial in this matter was very interesting, primarily because of the testimony of two distinguished physicists regarding the nature of electricity, a question which has engaged scientists for over 100 years and which, according to the department's expert witness, is not yet resolved.

The nature of electricity is of interest here because of the wording of the Uniform Division of Income for Tax Purposes Act (UDITPA), a statute drafted in the second half of the twentieth century and adopted in Oregon shortly afterwards.[2] The nature of electricity is important here only because UDITPA distinguishes between sales of tangible personal property and all other sales.

For sales of tangible personal property, the revenue from the sale is sourced to Oregon in all cases where the property is delivered or shipped to a purchaser within Oregon. ORS 314.665(2). For all other sales, revenue is sourced to Oregon only when a greater proportion of the income producing activity associated with the sale is performed in Oregon than in any other state. ORS 314.665(4). As noted above, the court finds that the greatest proportion of income producing activity related to the sales of electricity at issue here occurs in Canada.

The court is of the opinion that the proper resolution of the first issue in this case, the nature of electricity, is to be informed by the testimony of the experts as to the nature of electricity, the position of the Multistate Tax Commission (MTC) for the years at issue here and the decisions of tribunals in other states that have adopted UDITPA.

A.   *The Nature of Electricity*

The testimony of the experts is relevant to a consideration of the statutory language regarding "tangible personal property," that is "delivered or shipped" without regard to the "f.o.b. point or other conditions of the sale." ORS 314.665(2). Tangible personal property must be not only "property" but also "tangible" and subject to being "delivered or shipped," and potentially be loaded "free on board."

The testimony of taxpayer's expert witness supports a finding that electricity does not involve the transfer of something that is tangible or a "thing" that is delivered to a purchaser. Rather, according to that testimony, the transmission of electricity involves transmission of a

---

[2] Oregon's version of UDITPA is codified at ORS 314.605 to 314.675.

force occurring by reason of the operation of "virtual photons," which have no mass. Importantly, the testimony of taxpayer's expert established, and the department's witness agreed, that the sale of electricity is not the transfer of electrons from the seller to the buyer. There are as many electrons in the relevant system after the point of transmission of energy to the purchaser as before.

The expert witness for the department did not contest any of the conclusions or positions of the expert witness for taxpayer. Rather, the witness for the department simply opined that taxpayer's witness had chosen the wrong level of description for the problem at hand. This expert merely concluded that the question was to be differently analyzed when considering sales of electricity on the power grid—his viewpoint—as opposed to the level of particle physics—the viewpoint of the expert for taxpayer.

The problem with the approach of the witness for the department is that there is no indication in the statute that the answer to the question of whether a sale is of tangible property changes depending on the level of analysis. The court therefore can give no credit to the ultimate conclusion of the witness for the department. However, because the witness for the department agreed with the scientific analysis of the witness for taxpayer, the court concludes that on this score taxpayer has prevailed on the question of whether, more probably than not, the sale of electricity is a sale other than one of tangible personal property.[3] The court concludes that in selling electricity, a seller provides to the purchaser a force and not an item of property.

The court also considers it important that the discussion by the experts of the nature of electricity reveals that the characteristics of electricity do not fit at all well into the general framework found in ORS 314.665(2). Recall that this statute talks of property that is "delivered or shipped." The statute also contemplates that the property is of a type as to which a shipping term of "f.o.b." could be applied. Finally, paragraph (b) of subsection (2) of ORS

---

[3] "More probably than not" may be the best anyone can do on these fundamental questions as to the nature of the world and the matter and forces found in this world.

314.665 addresses property that could be shipped "from an office, store, warehouse, factory, or other place of storage in this state."

Although it may go too far to conclude that all tangible personal property must be capable of being shipped from such locations, this language is used in a way that suggests that the tangible personal property with which the subsection is concerned would be capable of such shipment from such a location. The court cannot comfortably imagine shipping electricity "f.o.b." or otherwise from any of the locations mentioned in the statute. Nor did the testimony of either expert witness in this case suggest that electricity could be considered to be of such a character. The conclusion that taxpayer's expert established is that electricity is a phenomenon in which virtual photons transmit force—not matter. Transmitters of force with no mass do not, in the opinion of the court, come within the legislative understanding of tangible personal property.

B. *Position of the MTC*

The treatment of gross receipts in the sales factor is, of course, a function of the provisions of UDITPA as adopted in Oregon. As such, courts in Oregon pay particular attention to the views of the MTC and sister states that have adopted provisions of UDITPA or are members of the Multistate Tax Compact which itself contains the provisions of UDITPA. *Atlantic Richfield Co. v. Dept. of Rev.*, 300 Or 637, 717 P2d 613, *on rehearing*, 301 Or 242, 722 P2d 727 (1986); *Twentieth Century-Fox Film v. Dept. of Rev.*, 299 Or 220, 700 P2d 1035 (1985). For the years at issue, the MTC Corporation Income Tax Audit Procedures Guideline Manual specified that electricity was to be treated as intangible personal property. The department argues that the MTC has altered its position to "neutral" on the matter. The department relies for this position on material that is not in the trial record and that, on its face, indicates that the change may have only been proposed for discussion. The behavior of the department in this regard is inconsistent with both the rules of evidence by which it is bound and basic principles of logic. For the years at issue a major institution in the effort to achieve uniformity among the states

following UDITPA principles has accepted that electricity is intangible in nature.

C.   *Case Law of Other UDITPA States*

The question of the nature of electricity for purposes of apportionment of income under UDITPA has only been considered in two cases. Those cases are *Appeal of PacifiCorp, Cal St Bd of Equal*, No 90027, 2002 Cal Tax LEXIS 469 (Sept 12, 2002) and *EUA Ocean State Corporation et al., v. Commissioner of Revenue*, No C258405-406, 2006 Mass Tax LEXIS 35 (Apr 24, 2006).

In *PacifiCorp* the tax administrative tribunal of a state neighboring this one—one with a long history of leading the way in issues of taxation of interstate business operations—concluded that the sale of electricity was the sale of a service and not the sale of tangible personal property. The decision of the tribunal is well reasoned and included consideration of testimony from the same expert witness who appeared on behalf of the department in this case.[4] The court considers this opinion to be especially important as well because the record in this case indicates that many of the sales of electricity in the western United States occur in the north-south corridor that includes the states of Oregon and California. Consistency in treatment of electricity in these two states is therefore of particular importance.

In *EUA Ocean State*, a tax tribunal of another UDITPA state considered at length evidence very similar to the evidence presented to this court and concluded, in a well reasoned manner, that electricity was similar to heat, light and sound and as such was not tangible. This conclusion is consistent with the views of taxpayer's expert witness on the nature of electricity as a force conductor that transmits energy to a purchaser as opposed to a "thing" with mass that is transferred to a purchaser.

Cases from other jurisdictions have been cited to the court. The department has also relied on a commercial summary of the positions of states as to how electricity is

---

[4] Indeed, the report of this witness presented in this case was essentially the same report submitted in the *PacifiCorp* proceeding.

treated. There are obvious errors in this summary and the department has not provided the court with detailed analysis of the material in the summary or information that would assist the court in determining the authoritative validity of this summary.

Several cases upon which the department relies are sales tax cases in which electricity is treated as subject to tax. The department states its position as "a sale is a sale is a sale." The court declines to accept the department's invitation to decide important matters based on euphemistic conclusions based on no analysis or consideration of parallel taxation regimes. It is enough to observe that a definition used in determining the base for taxation cannot, without much more than what the department provides, be used in the apportionment of the base of a separate and distinct tax regime.

D. *Conclusion as to Electricity*

The record in this case fully supports the conclusion that the sale of electricity is a sale other than a sale of tangible personal property. That conclusion rests not only on the testimony and material submitted by the expert witnesses as to the nature of electricity but also, given the positions of the MTC and other UDITPA states, on considerations of uniformity and consistency in the application of UDITPA provisions to taxpayers generally and this taxpayer in particular.[5]

E. *Treatment of Sales of Natural Gas*

The other issue presented in this case is the proper treatment of receipts from the sale of natural gas in the computation of the sales factor computation for taxpayer for one of the years at issue. The parties agree that natural gas

---

[5] The department has asserted that it has a long held administrative position that electricity is tangible personal property. It is not clear that there is such a long held policy and the attempts by the department to articulate that conclusion have met with difficulties addressed in previous summary judgment proceedings in this case. *See Powerex Corp. v. Dept. of Rev.*, 20 OTR 338 (2011); *Powerex Corp. v. Dept. of Rev.*, TC No 4800 (Dec 17, 2010). In any case, the court's conclusion is based on the statute, the factual record in this case and the considerations that must go into construing a uniform law. Even if the department had properly articulated its position on this question, that position could not trump the conclusion of this court based on the factors the court has considered.

is tangible personal property. Therefore, the proper treatment of the receipts from the sale of the natural gas depends upon ORS 314.665 and its directive that receipts are Oregon receipts when tangible personal property is "delivered or shipped to a purchaser *** within this state."

The position of the department is that because the contractual point of delivery of the natural gas in question is a location in Oregon, the sales are Oregon sales for purposes of computing the sales factor. Taxpayer points out that all of the customers who purchase natural gas from taxpayer are located in other states and do not use the natural gas in Oregon. Taxpayer argues that the statute should be interpreted as employing an ultimate destination rule such that the "interim" nature of what may be called delivery of the natural gas to a contractually agreed upon point in Oregon is not determinative.

The position of the department can be stated to be that where delivery of tangible personal property is made to a purchaser, the statute applies if the delivery point is in Oregon. The focus of the department is on the place of delivery. The position of taxpayer can be stated to be that where a purchaser is located outside Oregon, the statute dictates that the sale is not an Oregon sale. The focus of taxpayer is on the place where the purchaser is located.

For the year at issue, there is no question that the purchaser under the contract is not located in Oregon. The parties did not spend much effort in providing to the court the details of the gas transactions. However, from the record provided it appears that the gas in question is being transmitted over interstate pipelines that are, or function as, common carriers. The delivery point under the sales contracts in question is at a market center or hub that functions in an overall coordinated transmission system for natural gas that has developed in connection with changes in federal policy regarding interstate gas transmission. The gas in question is not consumed at the market hub point of delivery but is transferred to an ultimate user in another location.

It appears that although the statutory provisions of UDITPA have been construed by some states in the fashion urged by the department and in some states in the fashion

urged by taxpayer, most courts that have addressed the issue have adopted an ultimate destination rule rather than a state of delivery rule. Jerome R. Hellerstein and Walter Hellerstein, 1 *State Taxation* ¶ 9.18 [1][a]. In particular, in cases where delivery by a seller is to a common carrier for further shipment an ultimate destination approach is followed.[6] This is so even though the MTC takes the position that a sale is completed at the delivery point, even though the product is then subject to further shipment by the purchaser.

The purpose of the sales factor in apportionment is to recognize the contribution of the market state to the income producing process. Hellerstein, 1 *State Taxation* at ¶ 8.06[2]. On the facts of this case that purpose is clearly best served by looking beyond the point of contractual delivery where the purchaser is located in another state. This is especially so in cases such as this one where the "delivery" is a transfer of title within a common carrier pipeline. Applying an ultimate destination rule also will put Oregon in the position of the majority of states that have had to address the question under UDITPA. For these reasons, the court is of the opinion that taxpayer prevails as to the treatment of natural gas sales as well as with respect to the nature of electricity.

In the opinion of the court, an ultimate destination rule should be followed as to these sales of natural gas and the position of the department must be rejected.

## V.   CONCLUSION

The taxpayer is entitled to the relief requested and the deficiencies asserted by the department should be cancelled with appropriate refunds to be paid in accordance with law. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted.

---

[6]  See especially the concession of the Louisiana Department of Revenue in *Department of Revenue v. Parker Banana Co.*, 391 So 2d 762 (Fla Dist Ct App 1980) as to situations involving delivery to a common carrier, discussed in *State Taxation* ¶ 9.18[1][a].