# TWENTIETH CENTURY-FOX FILM CORPORATION,
*Respondent,*

*v.*

# DEPARTMENT OF REVENUE,
*Appellant.*

## (TC 1987; SC S30701)

700 P2d 1035

Elizabeth S. Stockdale, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief was Dave Frohnmayer, Attorney General, Salem.

Maurice O. Georges, Portland, argued the cause for respondent. With him on the brief were David C. Culpepper and Miller, Nash, Wiener, Hager & Carlson, Portland.

John K. Van De Kamp, Attorney General of the State of California, Edward P. Hollingshead, Deputy Attorney General, and Charles C. Kobayashi, Deputy Attorney General, Sacramento, California, filed a brief *amicus curiae* on behalf of the Franchise Tax Board of the State of California.

Eugene F. Corrigan, General Counsel, Alan H. Friedman, Assistant General Counsel, Multistate Tax Commission, Boulder, Colorado, and Carl N. Byers, Salem, filed a brief *amicus curiae* on behalf of the Multistate Tax Commission.

ROBERTS, J.

Linde, J., did not participate in this decision.

## ROBERTS, J.

The Department of Revenue (department) appeals the decision of the Tax Court in favor of Twentieth Century Fox (taxpayer). There is one dispositive issue: whether the department proved that the statutory three-factor apportionment formula used to apportion income to Oregon for purposes of corporate excise taxation did not fairly represent the extent of taxpayer's business activity in this state thus permitting the department to employ a different method.

Taxpayer produces and distributes motion pictures. Its only business activity in Oregon during the years in question was the licensing of motion pictures for exhibition by independent theaters. Taxpayer filed Oregon corporate excise tax returns for 1975, 1976 and 1977, using the statutory three-factor formula for apportionment of income to Oregon. ORS 314.650 to 314.665. ORS 314.650 through 314.665 are taken from the Uniform Division of Income for Tax Purposes Act (UDITPA), ORS 314.605 *et seq.* These statutes provide:

ORS 314.650

"All business income shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three."

ORS 314.655

"(1)  The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in this state during the tax period and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used during the tax period.

"(2)  Property owned by the taxpayer is valued at its original cost. Property rented by the taxpayer is valued at eight times the net annual rental rate. Net annual rental rate is the annual rental rate paid by the taxpayer less any annual rental rate received by the taxpayer from subrentals.

"(3)  The average value of property shall be determined by averaging the values at the beginning and ending of the tax period but the department may require the averaging of monthly values during the tax period if reasonably required to reflect properly the average value of the taxpayer's property."

ORS 314.660

"(1) The payroll factor is a fraction, the numerator of which is the total amount paid in this state during the tax period by the taxpayer for compensation, and the denominator of which is the total compensation paid everywhere during the tax period.

"(2) Compensation is paid in this state if:

"(a) The individual's service is performed entirely within the state; or

"(b) The individual's service is performed both within and without the state, but the service performed without the state is incidental to the individual's service within the state; or

"(c) Some of the service is performed in the state and (A) the base of operations or, if there is no base of operations, the place from which the service is directed or controlled is in the state, or (B) the base of operations or place from which the service is directed or controlled is not in any state in which some part of the service is performed, but the individual's residence is in this state."

ORS 314.665

"(1) The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

"(2) Sales of tangible personal property are in this state if:

"(a) The property is delivered or shipped to a purchaser, other than the United States Government, within this state regardless of the f.o.b. point or other conditions of the sale; or

"(b) The property is shipped from an office, store, warehouse, factory, or other place of storage in this state and (A) the purchaser is the United States Government or (B) the taxpayer is not taxable in the state of the purchaser.

"(3) Sales, other than sales of tangible personal property, are in this state if (a) the income-producing activity is performed in this state; or (b) the income-producing activity is performed both in and outside this state and a greater proportion of the income-producing activity is performed in this state than in any other state, based on costs of performance."

The three-factor formula works in the following way: Dollar values are assessed to each of three aspects of taxpayer's business: property, sales and payroll. Each of these factors is a fraction. The numerator of each fraction is the Oregon portion of the value and the denominator is the total value everywhere. Each fraction is rendered a percentage. The three percentages are added together and divided by three. The resultant percentage represents the extent of taxpayer's business in Oregon. It is multiplied by taxpayer's income during the tax year to determine the Oregon taxable income. The resultant dollar figure, after modifications not relevant to this case, is multiplied by the applicable excise tax rate to determine the amount taxpayer must pay.

This system typically produces fair taxation in that it fairly approximates the portion of taxpayer's business activity that was conducted in Oregon. The three-factor apportionment formula is the standard for covered industries in all the states that have adopted UDITPA. A variation of it is used in some non-UDITPA jurisdisdictions. There is no claim that it is 100 percent accurate for each taxpayer or taxing jurisdiction. However, if every taxing jurisdiction used this formula, the slight inequities would be balanced to a great extent and no more and no less than 100 percent of taxpayer's income would be taxed. Even though the UDITPA formula is not used universally, the inequities inherent in any apportionment formula are balanced to a certain extent, by the widespread usage of these three factors to apportion income.

In this case, taxpayer included in the numerator of the property factor the cost of positive prints[1] of its films, which are the only tangible property of taxpayer that enters Oregon.[2] Department's auditor modified the property factor numerator to include a portion of the value of taxpayer's film

---

[1] Taxpayer and department entered into a stipulation which included the following definitions:

"1. A film 'negative' is the original exposed film that is created by photographing a movie production. A film negative cannot be displayed for public viewing.

"2. A film 'print' is a positive print made from a film negative. Film prints are distributed to theaters for exhibition for public viewing."

[2] Taxpayer's returns used the depreciated value of the positive prints. Taxpayer has admitted this is incorrect. This is not at issue in this review.

negatives, which are stored in California. Film negatives are valued at the cost of producing the film. Their value varies greatly, but is generally between $5 million and $20 million.

Taxpayer challenged the proposed modification, but department upheld its auditor's assessment. Thus, taxpayer owed approximately $22,000 more for the three tax years than was indicated by the original returns.[3] Taxpayer appealed to the Tax Court, which held that department had not met its burden of proof to establish that the statutory apportionment formula did not fairly represent the extent of taxpayer's business activity in Oregon. Department acknowledges that it must meet this burden in order to apply a different formula from the three-factor apportionment formula. *Donald M. Drake Co. v. Dept. of Rev.,* 263 Or 26, 32, 500 P2d 1041 (1972), established that "the use of any method other than apportionment should be exceptional and the party—the taxpayer or the Department of Revenue—who seeks to invoke the applicability of ORS 314.670 has the burden of proof." Although this language leaves room for argument, it mandates that the burden of proof be placed on department in the instant case.

Further, the Tax Court determined that ORS 314.670, the UDITPA relief provision, set forth *infra,* did not permit variance from the UDITPA apportionment formula except where that formula would produce an unconstitutional result. It also stated that department could not rely on its regulation, OAR 150-314.670-(A), to depart from statutory apportionment and held that this regulation was inconsistent with ORS 314.670 and therefore invalid. For those reasons, the Tax Court ruled that department could not modify the statutory formula in this instance.

Department appealed. We review under ORS

---

[3] This is so because with the auditor's increase in the property factor numerator, the property factor percentage for Oregon was higher than on the return. When this percentage was added to the payroll factor percentage ($0 in all three years in this case) and to the sales factor percentage (.342 percent, .304 percent, and .659 percent, respectively for the years 1975, 1976 and 1977) and then divided by three, the result was also higher than on taxpayer's returns. Thus, taxpayer was taxed in Oregon on a higher percentage of its total income earned everywhere than it had anticipated. After multiplying the apportionment percentage times the total income times the applicable tax rate the difference between tax liability in taxpayer's original returns and those returns as modified by department was approximately $22,000.

305.445,[4] which provides that appeals from the Tax Court to this court "shall be in accordance with the procedure in equity cases on appeal from a circuit court." We thus review under ORS 19.125(3), which provides that "the cause shall be tried anew upon the record." *See Oregon Broadcasting Co. v. Dept. of Revenue*, 287 Or 267, 270-71, 598 P2d 689 (1979).

I

This review will focus on ORS 314.670 (Section 18 of UDITPA), which provides:

"If the allocation and apportionment provisions of ORS 314.610 to 314.665 do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for and the department may permit, or the department may require, in respect to all or any part of the taxpayer's activity, if reasonable:

"(1)   Separate accounting;

"(2)   The exclusion of any one or more of the factors;

"(3)   The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

"(4)   The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

We examine this section of the uniform act in connection with the act as a whole.

Professor William J. Pierce, the drafter of UDITPA, offered explanations of the purpose and nature of the act. He wrote: "The uniform act, if adopted in every state having a net income tax or a tax measured by net income, would assure that 100 per cent of income, and no more or no less, would be

---

[4] ORS 305.445 provides:

"The sole and exclusive remedy for review of any decision or order of the tax court shall be by appeal to the Supreme Court. Jurisdiction hereby is vested in the Supreme Court to hear and determine all appeals from final decisions and final orders of the tax court, except with respect to the small claims division of the tax court. Such appeals, and the review of final decisions and final orders of the tax court, shall be in accordance with the procedure in equity cases on appeal from a circuit court, but without regard to the sum involved. Upon such appeal and review, the Supreme Court shall have power to affirm, modify or reverse the order or decision of the tax court appealed from, with or without remanding the case for further hearing, as justice may require."

taxed." Pierce, *The Uniform Division of Income for State Tax Purposes,* 35 Taxes 747, 748 (1957). He refers to the allocation and apportionment sections of the uniform act as "a formula designed for manufacturing and merchandising businesses." Pierce, *supra,* at 749. He states that section 18 of the uniform act

> "necessarily must be used where the statute reaches arbitrary or unreasonable results so that its application could be attacked successfully on constitutional grounds. Furthermore, it gives both the tax collection agency and the taxpayer some latitude for showing that for the particular business activity, some more equitable method of allocation and apportionment could be achieved. Of course, departures from the basic formula should be avoided except where reasonableness requires. Nonetheless, some alternative method must be available to handle the constitutional problem as well as the unusual cases, because no statutory pattern could ever resolve satisfactorily the problems for the multitude of taxpayers with individual business characteristics." Pierce, *supra,* at 781.

Other commentators have discussed the purpose and interpretation of section 18 of UDITPA:

> "It must be recognized, of course, that the Uniform Act does contain an express grant of discretion to the administrator to select allocation [and apportionment] methods other than those prescribed. In the allocation [and apportionment] of income, unusual situations, which should be excepted from the application of general rules, frequently arise. Such situations may be impossible to anticipate or difficult to describe with sufficient precision to permit drafting of a provision in the statute setting forth precisely the rules to be applied. Accordingly, it is common in allocation statutes to include a general relief provision authorizing the administrator to depart from the general rule if necessary to obtain fair or equitable results. * * *" Keesling & Warren, *California's Uniform Division of Income for Tax Purposes Act* (Part I), 15 UCLA L Rev 156, 170 (1967).

Two basic goals of UDITPA, and thus of ORS 314.605 *et seq,* emerge: (1) fair apportionment of income among the taxing jurisdictions; and (2) uniformity of application of the statutes.[5] In this case, these two purposes are

---

[5] ORS 314.605(2) (Section 19 of UDITPA) provides:

"ORS 314.610 to 314.670 shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it."

seemingly in conflict. Taxpayer argues for uniformity in adhering to the statutory apportionment formula. Department argues for fair apportionment by recognizing the economic reality of the film industry and taxpayer's business activity in Oregon.

## II

Before turning to the dispositive issue in this case, we address two assignments of error: A. The Tax Court's determination that ORS 314.670 could be applied only to remedy unconstitutional apportionment results; and B. Its holding that OAR 150-314.670-(A) is invalid because it is inconsistent with ORS 314.670.

■    A.    Department argues that nothing in the language of ORS 314.670 or the commentaries thereon supports the Tax Court's conclusion that unconstitutional results only may be remedied under that statute. Department points out that such interpretation would preclude a state tax administrator from remedying an under-apportionment of a taxpayer's income because the taxpayer's constitutional rights would not have been violated. We agree with department.

■    ORS 314.670 is applicable in two situations: (1) to remedy unconstitutional results; or (2) to provide for alternatives to statutory allocation and apportionment in unusual cases where the UDITPA formula does not fairly represent the business activity of the taxpayer, particularly a taxpayer in a non-merchandising, non-manufacturing industry. Pierce, *supra,* at 749, 781. Indeed, the phrase "the department may require" alternatives to statutory apportionment and allocation in ORS 314.670 would have no meaning as a vehicle to remedy under-apportionment if unconstitutional results only could be remedied. This is so because "the department" is not in a position to assert the constitutional claims invoked upon occasion to avoid arbitrary and unreasonable results under statutory apportionment.

B.    Department argues that the Tax Court's invalidation of its administrative rule, OAR 150-314.670-(A), set forth *infra,* was incorrect because a proper reading of the rule indicates that it is consistent with ORS 314.670. Department does not argue that the rule provides authority for avoiding

statutory apportionment in this or any other case. Department's argument is that only from the erroneous perspective that the rule is an independent source of authority to avoid statutory apportionment does the rule appear to be invalid.

Taxpayer's position is not that disparate. It states:

"To the extent that [department] interprets its administrative rule as merely identifying industries for which it may be appropriate to give further consideration as to whether the statutory formula fairly reflects the Oregon activities of members of that industry, [taxpayer] would not challenge the validity of such regulation. However, the regulation can only focus attention on particular industries; it cannot substitute for the showing required by ORS 314.670 that the statutory formula does not fairly apportion the income of members of that industry. * * * To that extent, [taxpayer] supports the Tax Court's conclusion that the regulation is invalid." Respondent's Brief, pp 25-26.

Taxpayer concludes that whether industry-wide administrative exceptions to statutory apportionment are authorized by ORS 314.670 is not an issue that need be decided in this case.

Department promulgated OAR 150-314.670-(A) to explain ORS 314.670. The substance of this rule is taken from model regulations proposed by the Multistate Tax Commission (MTC). During the years in question, the rule repeated the text of ORS 314.670 and then provided:

"ORS 314.670 permits a departure from the allocation and apportionment provisions of ORS 314.610 to 314.665 only in limited and specific cases. ORS 314.670 may be invoked only in specific cases where unusual fact situations (which ordinarily will be unique and nonrecurring) produce incongruous results under the apportionment and allocation provisions contained in ORS 314.610 to 314.665.

"In the case of certain industries such as air transportation, rail transportation, ship transportation, trucking, television, radio, motion pictures, various types of professional athletics, and so forth, the foregoing rules in respect to the apportionment formula do not set forth appropriate procedures for determining the apportionment factors. Nothing in ORS 314.670 or in OAR 150-314.670-(A) to 150-314.670-(C) shall preclude the Department from establishing appropriate procedures under ORS 314.655 to ORS

314.665 or under ORS 314.280 for determining the apportionment factors for each such industry, but such procedures shall be applied uniformly."

This rule names certain industries for which the department may depart from the three-factor apportionment formula. We do not read the rule to create a *per se* exemption for these industries. The first paragraph of the rule maintains the statutory position that departure from the three-factor formula will be permitted in limited cases. The second paragraph, however, notifies taxpayers of named industries that statutory apportionment may not fairly represent their respective Oregon business activities.

■ OAR 150-314.670-(A) clearly does not prevent taxpayer from using the statutory apportionment formula nor from maintaining that this formula applies to taxpayer's returns. This rule does notify taxpayer, however, that the motion picture industry, of which taxpayer is a member, may be engaged in business activity which the statutory formula does not fairly represent. OAR 150-314.670-(A) is a valid exercise of department's interpretive rulemaking authority. See ORS 305.100(1); 314.815.

As for the argument that regulatory variations in the statutory apportionment formula defeat uniformity, we are persuaded that this is not true in the instant case. In the amicus brief of MTC, the organization primarily responsible for promoting uniformity of taxation in member states, the following analysis appears:

"With respect to the special types of industries of a non-mercantile or non-manufacturing nature, variations to one or more factors of the standard formula should be permitted by either a uniform administrative rule-making or case-by-case approach by administrative action taken under Section 18 of UDITPA. However, the practical effect of the Tax Court's ruling—which appears to prohibit the consideration and adoption of a written set of standards to be applied uniformly—will work against the achievement of the uniform application of common standards, both within a particular state, as well as among the many states seeking to achieve uniformity through application of UDITPA or the Compact.

"One direct-line approach to the achievement of uniformity in apportionment of income among the states is their adoption of common, definitive written rules. The effect of

the Tax Court's decision is to preclude this approach. However, contrary to the Tax Court's belief, the fact that a state is prohibited from rule-making in this regard will not then result in the standard equally-weighted three-factor formula being applied uniformly to non-mercantile, non-manufacturing industries. When the standard formula does not reasonably apply, the states will still be required to apply a modified formula in an effort to more reasonably apportion the income of those businesses. The process required by the Tax Court's opinion to do so, the Section 18 *ad hoc* method, will be set in continuous operation with regard to those industries. The continuous use of the Section 18 *ad hoc* method of adjustment may likely result in more disparate treatment of businesses, even of the same industrial type, than the application of publicly adopted rules employing definitive standards which control and limit administrator's exercise of discretion. This is due, in part, to the relative shortness of non-public, unrecorded institutional memory developed in the case-by-case setting, in contrast to that resulting from the formality required by the public consideration and adoption of written administrative rules."

This analysis highlights the fact that the scenario most destructive of uniformity may be the only one left to department under the Tax Court's opinion. That scenario is to leave the bare words of UDITPA, without explanation through administrative rulemaking, as the sole determinant whether to use apportionment or an alternative. Thus, a case-by-case application of a statutory standard ("fairly represent") would be necessary. Uniformity would suffer because of the different attitudes of tax administrators, both within Oregon and among all UDITPA states. Differing standards for different years and in the several states are almost certain to obtain. Promulgating rules in UDITPA jurisdictions, with the participation of MTC, is more likely to result in uniform treatment of taxpayers comparably situated. We recognize that rulemaking is no guarantee of uniformity. However, we agree that the promulgation of rules such as OAR 150-314.670-(A) is a step toward uniformity, which is a primary purpose of UDITPA.

Our conclusion that department's rulemaking supports uniformity in the apportionment of income of a motion picture industry corporation is buttressed by the fact that the jurisdiction which has had the most experience taxing this

industry adopted guidelines which paralleled department's *ad hoc* modification of taxpayer's returns in this case and by the subsequently adopted OAR 150-314.655-(2)-(D).[6] *See* Califor-

---

[6] Since 1977 a more detailed interpretation of the apportionment formula as it applies to the film industry has been promulgated. OAR 150-314.655(2)-(D) explains the special considerations given to the property factor of film industry taxpayers. It provides:

"The total value of films in release to theaters, television stations and television networks and by a television network for telecast shall be attributed to this state in the same ratio in which the total Oregon receipts from such films in this state bears to the total of such receipts everywhere. The total receipts from films in release to television networks or by television networks are attributable to this state in the same ratio that rate card values for such network stations (owned and affiliated) located in the Pacific Time Zone bears to the total rate card values for all such network stations (owned and affiliated) everywhere.

"The value of films includes all expenses incurred in producing the negatives as well as the positive prints which are required to be capitalized for federal income tax purposes. Therefore, the value of film includes, but is not limited to the following:

"1. Manuscript and screenplay costs.

"2. Wardrobe and set design costs.

"3. Salaries of camera operators, actors, directors, etc.

"Films are to be included in the property factor at original cost for seven years beginning with the original or first release date. Thereafter, the films shall be included at 10 percent of original cost beginning with the eighth year and decreasing 1 percent of original cost annually for ten consecutive years. However, a film which is expensed at the time of production, shall be included at its full original cost for one year from the release date and shall thereafter be excluded except for periods of rerelease. A film which is rereleased shall be included at its full original cost for one year from the rerelease date for each separate rerelease period. The value of films which are incomplete or completed but not released, are not included in the property factor until released.

"*Definitions*

"*Film.* The physical embodiment of a play, story or other literary or artistic work except that it does not include programs such as news and sports produced for telecast. Film includes a tape.

"*Release date.* The date on which amortization of film begins. It is referred to in the motion picture industry as the 'accounting release date.' For television films it is the date on which the film is first telecast.

"*Rerelease.* The release of any film for general theatrical and foreign distribution, syndication, or television network exhibition after its initial distribution (release period) has terminated.

"'*Rate Card*' *values.* Those published by Standard Rate and Data Service, Inc."

This rule is not before this court in this case and we render no decision as to its validity.

nia's Guideline for Motion Picture and Television Film Producers and Television Network Broadcasters Apportionment Formula.[7]

## III

■   Although the specific facts of this case present an issue of first impression, prior caselaw had discussed apportionment and section 18 of UDITPA (ORS 314.670), *Donald M. Drake Co. v. Dept. of Rev., supra.* Statutory three-factor apportionment is the favored method of attributing income for purposes of Oregon corporate excise taxation. The party who desires a different method has the burden of proof. *Drake, supra,* 263 Or at 32. Two things must be proved.

First, department must demonstrate that the statutory formula as a whole does not "fairly represent the extent of the taxpayer's business activity in this state." It is necessary to establish that the application of the three factors does not fairly represent business activity, not merely that one factor fails to meet this standard. This is so because in certain cases one factor may be unreasonably high and another unreasonably low but the application of the three factors together fairly represents business activity. *See Donovan Co. v. Treasury Dep't.,* 126 Mich App 11, 337 NW2d 297, 301 (1983). It is also important to note that it must be established that statutory apportionment does not adequately reflect business activity, not merely that it does not adequately reflect income earned in the state. *See Amoco Production Co. v. Arnold, Director of Taxation,* 213 Kan 636, 518 P2d 453 (1974).

Second, the party with the burden of proof must establish that its alternative method of allocating income is "reasonable." We believe that in the context of UDITPA, reasonableness has at least three components: (1) the division of income fairly represents business activity and if applied

---

[7] The California guidelines, department's modification in this case, and OAR 150-314.655(2)-(D) all vary from statutory apportionment in the same way. They include in the property factor numerator of a state the same percentage of the value of the films (including the value of the negative) as the percentage of sales in that state to sales everywhere. Resort to this abstraction is necessary because taxpayer, and apparently the motion picture industry generally, does not keep records of receipts for each film in each state.

uniformly would result in taxation of no more *or* no less than 100 percent of taxpayer's income; (2) the division of income does not create or foster lack of uniformity among UDITPA jurisdictions; and (3) the division of income reflects the economic reality of the business activity engaged in by the taxpayer in Oregon.

With regard to the first requirement, we initially examine the extent of taxpayer's business activity in the state. This is the factual predicate for application of the three-factor formula.

■    Taxpayer is in the business of producing and distributing films. The tangible properties of taxpayer which enter Oregon are prints made from the negatives of taxpayer's motion pictures. The prints, as reels of exposed film, have a value ranging from $800 to $1000 depending on footage. The negatives from which the prints derive are valued at production cost and could vary in value from under $5 million to over $20 million. It would be inaccurate to describe taxpayer's business activity as distributing reels of prints without reference to the negatives from which they are made. Without the negative, the distribution prints could not be made. The business activity of taxpayer in Oregon is the distribution for display of the embodiment of a story or theme, photographed, edited, acted and captured on film.

The question posed by the first requirement is whether the statutory apportionment formula fairly represents the extent of the taxpayer's business activity in this state. We have already stated that department must show not just that one factor fails to meet this standard, but that the entire formula taken together does not fairly reflect taxpayer's business activity.

The evidence establishes the following:[8] The payroll

---

[8] There were three ways in which department attempted to meet its burden of proof by a preponderance of the evidence, as is required by ORS 305.427. First, through admitting, in its answer, facts stated by taxpayer in the complaint; second, by entering a joint stipulation of facts; third, with the testimony of taxpayer's witness Paul H. Thompson, Manager of Tax Administration at Twentieth Century-Fox.

Facts alleged in the Amended Complaint and admitted by defendant include:

1. [Taxpayer's] principal business is the production and distribution of motion pictures.

factors for these three years are zero. This factor cannot be a minus or negative number. Thus, the taxpayer enjoys the lowest possible payroll factor. It is also established that the sales factors for each year accurately reflects taxpayer's receipts in Oregon. Because both the payroll factor and the sales factor are either accurate or not capable of being inaccurately high, these factors will not offset any under-evaluation in the property factor. Whatever inaccuracy and unfairness exist in the property factor may establish that the three-factor statutory apportionment formula does not fairly represent business activity.

The statutory property numerator is calculated solely with reference to the prints (as opposed to prints and negatives) because the prints, the reels of films, are the only tangible property to enter the state. Their value reflects only the cost by foot of film on a reel without regard to the contents of the film. This figure substantially underrepresents the

---

2. [Taxpayer's] payroll factor was zero for all three tax years.

3. [Taxpayer's] sales factor * * * accurately reflected [taxpayer's] gross receipts in Oregon."

4. [Taxpayer's] property factor numerator was the federal basis of prints within Oregon during each tax year.

5. [Taxpayer's] property factor denominator was "the total value of [taxpayer's] total property everywhere."

Facts agreed to in the stipulation include:

1. The cost of producing a movie is assigned to the basis of a film negative.

2. The basis of prints during 1975, 1976 and 1977 ranged from $800 to $1,000, depending upon film footage.

3. [Department's] property factor numerator was calculated according to the California Guidelines (film value includes production costs; numerator is same percentage of film cost as percentage of Oregon receipts to receipts everywhere).

4. [Taxpayer] "does not keep income records by state for each individual film it distributes."

Mr. Thompson testified on cross-examination:

1. The location of the negatives has no influence on how much money the prints earn when distributed.

2. The production costs of a film could be over $20 million. A film costing less than $5 million to produce is considered low budget.

3. The cost of making prints is not affected by the production costs or the income-producing potential of the film.

business activity of taxpayer in this state. The statutory apportionment formula's use of the value of prints to the exclusion of the value of negatives in the Oregon property factor numerator is woefully inadequate to "fairly represent" the extent of that business activity. Thus, department has proved that "the apportionment provisions of ORS 314.610 to 314.665 do not fairly represent the extent of taxpayer's business activity in this state * * *." ORS 314.670.

The second requirement of proof involves the reasonableness of department's substituted apportionment formula. Department's auditor originally calculated a percentage of all films in inventory but the department's hearing officer expressly determined that this was not proper.[9] Opinion and Order No. I 83-48, *Twentieth Century-Fox Film Corporation,* p. 10, dated April 12, 1983. Pursuant to this order, department was to follow the California guidelines in their entirety to calculate the property factor. These guidelines provide:

> "The numerator of the property factor includes the following to the extent the property is in California.
>
> "* * * * *
>
> "(c)   The total value of films in release * * * are attributed to this state in the same ratio in which the total California receipts from such films * * * bears to the total of such receipts everywhere."

Substituting "Oregon" for "California," the effect of the hearing officer's ruling is to limit the Oregon property factor numerator to a percentage (Oregon receipts over receipts everywhere) of the value of those films distributed in Oregon during each tax year in question.

We find department's modified apportionment formula, as defined in the preceding paragraph, to be reasonable under ORS 314.670. The apportionment was proposed by department and does not result in more than 100 percent of taxpayer's income being taxed. The apportionment fairly

---

[9] The Department of Revenue's Opinion and Order determined that the California guidelines required that a percentage of the value of only films in release or rerelease be included in the property factor numerator. The order determined that the California guidelines should be followed in their entirety, but that in so recomputing taxpayer's taxes, an amount in excess of the department's assessments would be due. As the statute of limitations for additional assessments had expired, the hearings officer merely sustained the assessments.

represents taxpayer's business activity in Oregon in that it accurately reflects the cost or value of films owned by taxpayer and distributed for display in Oregon. The apportionment fosters uniformity among UDITPA jurisdictions in that it conforms to the California guidelines, which could serve as a model for other states with less experience with the motion picture industry. The apportionment reflects the economic reality of the distribution of motion pictures by taxpayer by discarding an artificial distinction between prints and negatives and attributing to a film the costs of production, which more accurately reflects the business activity of taxpayer.

Department has met its burden of proof by a preponderance of the evidence, ORS 305.427. It may properly utilize ORS 314.670(4) in avoidance of the statutory apportionment formula in this case. Department has also proved that its modification of the property factor numerator is reasonable.

We are unable to ascertain from the record whether the hearings officer's calculations considered the percentage value of all films in release or rerelease or only those films distributed in Oregon during each tax year in question. In order to be reasonable, the property factor numerator for a given tax year should reflect a percentage of the value only of films distributed in Oregon during that year. To include a percentage of the value of other films would not accurately reflect the business activity of taxpayer in Oregon, and would not be "reasonable" under ORS 314.670.

The decision of the Tax Court is reversed and remanded with instructions to remand to the Department of Revenue.