IN THE OREGON TAX COURT

PACIFIC COCA-COLA BOTTLING CO.
*v.*
DEPARTMENT OF REVENUE
(TC 1994)
The COCA-COLA COMPANY
*v.*
DEPARTMENT OF REVENUE
(TC 1995)

Milo E. Ormseth and Peter R. Jarvis, Stoel, Rives, Boley, Fraser & Wyse, of Portland represented plaintiffs.

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, of Salem, represented defendant.

Decision for defendant rendered December 16, 1987.

## CARL N. BYERS, Judge.

By this appeal, plaintiffs challenge defendant's application of the traditional three-factor formula in apportioning plaintiffs' combined interstate income for 1967 through 1974. The Coca-Cola Company (Coca-Cola) is a Delaware corporation which manufactures and sells soft drink syrups worldwide. Pacific Coca-Cola Bottling Co. (Pacific) is a wholly owned subsidiary of Coca-Cola, doing business in the states of Oregon and Washington. Although Coca-Cola owns other bottling subsidiaries in addition to Pacific, most of the bottling operations which process Coca-Cola products worldwide are independently owned franchises. (Throughout this case, the parties have referred to Coca-Cola's wholly owned subsidiary bottling organizations as "SBOs" and the nonsubsidiary bottling organizations as "NBOs".)

In a prior case in this court, it was determined that Coca-Cola and its wholly owned bottling subsidiaries (SBOs) constitute a unitary business which may be required to combine and apportion its unitary income for purposes of Oregon's corporate excise tax. *Coca-Cola Co. v. Dept. of Rev.,* 271 Or 517, 533 P2d 788 (1975). Plaintiffs accept that determination, but now contend that the statutory three-factor formula used to apportion plaintiffs' combined incomes does not "fairly represent" the extent of plaintiffs' business activities in Oregon. The applicable law for the years in question, ORS 314.670, provided:

> "If the allocation and apportionment provisions of ORS 314.610 to 314.665 do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for and the department may permit, or the department may require, in respect to all or any part of the taxpayer's business activity, if reasonable:
>
> "(1) Separate accounting;

"(2) The exclusion of any one or more of the factors;

"(3) The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

"(4) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income."

## SCOPE OF REVIEW

Before addressing the merits of plaintiffs' appeal, it is necessary to consider the scope of review arguments raised by defendant. In contending that the court has limited scope of review in this case, defendant relies upon two arguments which may be summarized as follows:

(1) Determination of whether the statutory apportionment formula should be modified has been delegated to the Department of Revenue. The department's determination can be judicially overturned only if the department abused its discretion in making such determination.

(2) Plaintiffs must prove that application of the statutory formula results in a tax "out of all appropriate proportion," (a constitutional standard) as opposed to the "fairly represent" standard applied by defendant in *Twentieth Century-Fox Film v. Dept. of Rev.,* 299 Or 220, 700 P2d 1035 (1985).

The court rejects defendant's position on both points. While it acknowledges that the legislature has delegated to defendant certain discretion in the administration of ORS 314.670, the test to be applied by the court is not whether that discretion has been abused but rather whether:

"(1) [T]he application of the formula by the department reasonably approximates the taxpayer's income in Oregon, and (2) the application of the rule by the department, 'effectuates [the] general purpose to make uniform the law of those states which enact [UDITPA].'" *Atlantic Richfield Co. v. Dept. of Rev.,* 300 Or 637, 645, 717 P2d 613 (1986).

Contrary to defendant's contention, the court finds no holding in *Twentieth Century-Fox Film v. Dept. of Rev., supra,* which would indicate that a taxpayer must meet a higher standard than the department in seeking a modification of the statutory formula under ORS 314.670. Certainly

there is no language within the statute itself which would justify applying a double standard or different meanings to the terms "fairly represent." Thus, plaintiffs' burden in this case, as defendant's burden was in *Twentieth Century-Fox Film*, is to establish two facts:

> "First, department [plaintiffs] must demonstrate that the statutory formula as a whole does not 'fairly represent the extent of the taxpayer's business activity in this state.' It is necessary to establish that the application of the three factors does not fairly represent business activity, not merely that one factor fails to meet this standard. This is so because in certain cases one factor may be unreasonably high and another unreasonably low but the application of the three factors together fairly represents business activity. * * *

> "Second, the party with the burden of proof must establish that its alternative method of allocating income is 'reasonable'." *Twentieth Century-Fox Film v. Dept. of Rev., supra,* at 233.

In order to prevail, plaintiffs must prove these facts by a preponderance of the evidence.

The basic facts can be briefly stated. Coca-Cola manufactures syrup from a secret formula for its renowned soft drink. The syrup is then sold to various bottling companies around the world. Approximately 10 percent of the syrup is sold to SBOs and 90 percent sold to NBOs. Although the NBOs are independently owned, Coca-Cola exercises extensive control over them, both domestic and foreign. This control arises out of Coca-Cola's long term franchise agreements with the NBOs and the need to assure a uniform end product.

Coca-Cola maintains that because the NBOs are subject to the same controls as SBOs and are treated like SBOs, they are a necessary and integrated part of Coca-Cola's operations in all respects except ownership. The evidence established that the NBOs and SBOs stand on equal footing with regard to Coca-Cola. They pay the same amounts for syrup and are treated the same in the areas of advertising, marketing, production, quality control, plant design and engineering. Defendant essentially admits that Coca-Cola has created a "closed system" which includes within it the NBOs. (Tr. 480). Defendant also admits that:

"[T]he contract relationships between The Coca-Cola Company and its independent franchisee bottlers (the "independent franchisee system") are an extremely valuable asset of The Coca-Cola Company." (Request No. 9).

Defendant has also admitted that:

"[T]he maintenance, use and development of the independent franchisee system constitute an important part of the business activity of The Coca-Cola Company." (Request No. 11).

Defendant admits, and plaintiffs' evidence establishes, that the Coca-Cola trademarks are the most recognized in the world. Coca-Cola's success over the past one hundred years has been due primarily to its trademark activity. The evidence demonstrated that from the very beginning Coca-Cola advertised extensively. Coca-Cola has been unusually successful in convincing the world that a Coke is "the real thing." Defendant admits "[t]hat the maintenance, use and development of the trademark intangibles constitute an important part of the business activity of The Coca-Cola Company." (Request No. 10). Although the trademark activities consist primarily of advertising, they include other activities such as litigation to protect the trademarks, sample testing and checking for substitutes. The focus of Coca-Cola's trademark activities has been to make its product a part of the consumer's life worldwide.[1]

Defendant admits that:

"[T]he trademarks, tradenames, secret formulas and similar intangible assets (the 'trademark intangibles') developed by The Coca-Cola Company over the years constitute an extremely valuable asset of The Coca-Cola Company." (Request No. 8).

Based on the above facts, plaintiffs contend that the statutory formula fails to "fairly represent" plaintiffs' business activity in Oregon by virtue of the fact that it does not adequately reflect either Coca-Cola's trademark activities or its NBO activities.

In support of their arguments, plaintiffs introduced evidence designed to demonstrate that inclusion of either of

---

[1] The appealing and popular song, "I'd Like To Teach The World To Sing" was written especially for a Coca-Cola advertisement.

these factors would reduce the amount of income allocated to Oregon. With regard to the trademark activities, plaintiffs' evidence indicated that, based on a royalty savings approach, the trademarks would have a conservative value of approximately $1 billion dollars for 1967. Allocating this value on the basis of gallons of syrup sold results in a 1967 factor for Oregon of .003280. (Tr. 288). It should be noted that the value assigned to the trademarks is not important since it is only a number to use in allocating the gallons of syrup consumed. The factor derived simply represents a proportion of the total syrup used by Oregon. (Tr. 373)

In measuring the importance of the NBO activity to the operations of Coca-Cola, plaintiffs were at a disadvantage. Since NBOs are independently owned and their records are not available to plaintiffs, plaintiffs' expert had to extrapolate the probable factors from known information. For example, plaintiffs know the gallons of syrup used by SBOs and the amount of property used by those subsidiaries to process that syrup. Based on that relationship, plaintiffs' expert extrapolated from the known amount of gallons of syrup used by the NBOs to estimate the amount of NBO property used to process that syrup. That amount was then compared to the worldwide extrapolated NBO property to derive an Oregon NBO property factor. Plaintiffs applied this same process to extrapolate an NBO payroll factor and an NBO sales factor. These three factors were then averaged to arrive at an Oregon NBO extrapolated factor of .001746 for 1967. (Ex. 9 at 5).

Plaintiffs utilized their NBO factor and trademark factor by modifying the statutory formula as follows: Plaintiffs gave Oregon's statutory three-factor formula a weight of one, the NBO factor a weight of one, and the trademark factor a weight of one. When these three factors are then totaled and divided by three, plaintiffs derived a modified Oregon factor of .005228 for 1967.[2] (Ex. 9, at 7).

Plaintiffs' modified apportionment approach results in a substantial difference for the amount of income allocated to Oregon. This is dramatically represented by comparing the total income allocated to Oregon for all years, 1967-1974.

---

[2] Plaintiffs also offered a Version Two alternative which increased the weight given to the trademark factor by two.

Plaintiffs' modified formula would allocate a total of $9,058,686 to Oregon while the statutory formula as applied per defendant's audit allocated $18,785,466 to Oregon. (Ex. 13, at 1).

*Trademark Activity*

As indicated above, plaintiffs contend that the statutory formula does not "fairly represent" its business activities in Oregon because the formula fails to reflect its trademark activities. Plaintiffs argue that the sales factor is inadequate because, (1) Coca-Cola trademarks are so important and valuable as to be unique, and (2) sales at different levels distort the income properly allocable to Oregon. Each of these points merits separate discussion.

In essence plaintiffs argue that the use of Coca-Cola trademarks in Oregon constitutes the use of intangible property which, for purposes of the statute, must be viewed as business activity. Plaintiffs acknowledge that intangibles are normally not included in an apportionment formula but contend that in this case the unique relationship of its trademarks to its products requires such inclusion. Plaintiffs cite *Twentieth Century-Fox Film, supra,* as an example of where intangible values must be included in order to fairly represent business activity.

Without attempting to consider the dollar value of plaintiffs' trademark activities, it is clear, as plaintiffs' own evidence indicated, that the real value of the trademarks is "in the hearts and minds" of the consumers. That type of value however, benefits more than Coca-Cola. It also benefits the soft drink bottlers, both SBOs and NBOs, and all retail sellers of the soft drink such as stores, restaurants and theaters. Contrary to plaintiffs' contentions, the court believes that the value of the trademarks to Coca-Cola is adequately represented by Coca-Cola's sales. Whatever the consuming public's reaction to the trademarks may be, the trademarks have no value to plaintiffs unless consumers purchase plaintiffs' soft drink. While it is true that the relationship between Coca-Cola and the consumer is somewhat indirect, since Coca-Cola sells its syrup to the bottlers, nevertheless plaintiffs' own evidence showed that there is a direct relationship between consumption and the amount of syrup used. Thus, there is a direct relationship between the value of Coca-Cola's trademarks and

the amount of syrup sold. Plaintiffs' approach ignores the substantial benefit received by the bottlers and retailers. To allocate all of the value of the trademarks to Coca-Cola and none to the SBOs, NBOs or retailers would attribute a disproportionate value to Coca-Cola.

It is at this point that plaintiffs' second argument must be addressed. Plaintiffs argue that combining the sales of Pacific Coca-Cola, which are made at the wholesale level, with the sales of Coca-Cola, which are made at the manufacturers' (syrup) level, distorts the income properly allocable to Oregon. In light of the great value of the trademarks, plaintiffs contend that Coca-Cola syrup sales should be given approximately six times the weight of bottlers' sales because the bottlers' wholesale sales represent a much smaller proportion of the syrup manufactured by Coca-Cola. This argument assumes that all of the value of the trademarks inures to the benefit of Coca-Cola alone.

■ Plaintiffs' arguments also ignore the unitary concept, which combines the manufacturing level sales and the wholesale level sales into one. When two related companies such as plaintiffs are determined to be unitary and their incomes are combined they are viewed for tax purposes as if they were a single company. On that basis, where plaintiffs' intercompany sales are eliminated and just the total sales to outside parties are considered, no distortion occurs. The only way distortion could be found is if the court determined a value of the trademarks for each level of sales and then weighted the sales to reflect that relationship. This would seem an impossible task. Plaintiffs' situation is not like that found in *Twentieth Century-Fox Film v. Dept. of Rev., supra,* where the business activity represented in the property factor needed to be increased to reflect the real underlying cost of producing that property. Here, plaintiffs' trademark activities are not part of the cost of producing the syrup but in marketing it. Consequently, plaintiffs' trademark activities are adequately reflected in the statutory sales factor.

*NBO Activity*

■■ Plaintiffs' contentions with regard to including the NBO activities as a factor in the formula are less distinct but equal in significance to the trademark contentions. The concept of a unitary business necessarily implies unity of

ownership as well as of management or operation. *Butler Bros. v. McColgan,* 315 US 501, 62 S Ct 701, 86 L Ed 991 (1942). Unity of ownership is usually mentioned as the first requirement. See Dexter, *The Unitary Concept In State Income Taxation of Multistate-Multinational Businesses,* 10 Urb Law 181 (1978). The fundamental notion has been expressed as follows:

> "Since we do not normally tax one entity on the income of another, or combine incomes of different owners in order to compute the taxable income of one, separate ownership alone requires separation of treatment, no matter how closely the business activities are otherwise integrated." Keesling & Warren, *The Unitary Concept In The Allocation Of Income,* 12 Hastings L J 42, 49 (1960).

One reason that ownership is an inherent limitation upon the imposition of a combined income tax is because the taxing authority must have jurisdiction to be able to obtain information as well as to impose the tax. The importance of this point is manifest here where plaintiffs have had to extrapolate information for the NBOs.

Plaintiffs' seek to include the NBOs as part of the unitary business for purposes of apportionment but not include the NBOs' income in the total income to be apportioned. (Tr. 385). This would result in an underallocation and undertaxing of plaintiffs' income, just as excluding an apportionment factor but including the income would result in an overtaxing of the income. (See the dissent of Justice Stevens in *Mobil Oil Corp. v. Commissioner of Taxes,* 445 US 425, 100 S Ct 1223, 63 L Ed 2d 510 (1980)).

There is no question that the NBOs are closely integrated with and associated with plaintiffs' operations. In fact, as noted in the prior case:

> "Thus it appears that both the independent bottlers and the wholly owned subsidiaries are dependent upon and contribute to Coca-Cola's multistate operations, and were it not for the fact that the independent bottlers are independently owned, they, too, would constitute part of Coca-Cola's unitary business." *Coca-Cola Co. v. Dept. of Rev.,* 271 Or 517, 525, 533 P2d 788 (1975).

Plaintiffs attempt to distinguish Coca-Cola's business activity related to NBOs from the business activity of the

NBOs themselves. That is, plaintiffs view Coca-Cola's ownership of the franchise agreements and its activities in relationship to the NBOs as constituting significant "business activity" that should be recognized. The problem with plaintiffs' position is that plaintiffs do not attempt to measure that business activity by the payroll of Coca-Cola employees who may visit or work at the NBO plants. Rather, plaintiffs' proposed method simply takes the extrapolated property, payroll and sales of the NBOs as evidence of plaintiffs' business activity. They are not the same. Plaintiffs acknowledge that the only reason NBO activity is not included in the traditional three-factor formula is because the NBOs are not owned by plaintiffs. (Plaintiffs' Opening Post-Trial Memorandum at 14). It follows that the business activity of the NBOs may not be included either directly or indirectly in the apportionment formula for plaintiffs.

Plaintiffs have failed to establish that the statutory apportionment formula does not "fairly represent" the extent of plaintiffs' business activities in Oregon. Defendant's Opinion and Order No. I 83-50 is hereby sustained. Defendant to recover its costs.