IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| VESTA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 130546D |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

This Final Decision incorporates without change the court's Decision, entered

June 2, 2015. The court did not receive a statement of costs and disbursements within 14 days

after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appeals Defendant's Notices of Deficiency Assessment dated September 24,

2013, for the 2007 and 2008 tax year. A trial was held in the Oregon Tax Courtroom on January

28, 2015 and January 29, 2015, in Salem, Oregon. Scott M. Schiefelbein, Attorney at Law,

appearing on behalf of Plaintiff. Chris Uriarte (Uriarte), Plaintiff's Chief Payments and Products

Officer; Tom Nebel (Nebel), Plaintiff's Chief Financial Officer; and Scott Justice (Justice),

Plaintiff's Payment Manager testified on behalf of Plaintiff. Marilyn Harbur, Senior Assistant

Attorney General, Department of Justice, appeared on behalf of Defendant. Joe DiNicola

(DiNicola), Defendant's Tax Policy Coordinator, and Michele Henney (Henney), University of

Oregon program manager, Finance and Securities Analysis Center, testified on behalf of

Defendant. Plaintiff's Exhibit 1 through 6 was received without objection. Defendant's Exhibit

A was received without objection.

The parties submitted post-trial briefs. On March 13, 2015, Defendant submitted Motion

to Strike Plaintiff's Post-Trial Memorandum and Attachments, stating that Plaintiff's Attachment

E "was not exchanged under TCR-MD 12 C(1)(a), and its introduction now violates fair process [,] fair play and the rules of evidence" (Def's Mot at 1.) and portions of Mr. Uriarte's testimony was misstated in Plaintiff's post trial memorandum. (Def's Mot at 2.) Plaintiff filed a response, dated March 23, 2015, stating that "Attachment E is a rebuttal document prepared following trial that responds to specific points made by Defendant's expert witness" (Ptf's Resp at 1.) and "[t]he summary of Chris Uriarte's testimony in the post-trial memorandum is consistent with Mr. Uriarte's testimony and Vesta's case in chief." (Ptf's Resp at 2.)

At the close of the trial, the court granted the parties request to file post-trial briefs. Rebuttal exhibits are properly offered at trial, giving the opposing party an opportunity to cross examine the witness about the offered rebuttal exhibit. Plaintiff did not request, nor did the court grant Plaintiff an opportunity to file a rebuttal exhibit with its post-trial brief. Defendant stated in its Motion to Strike Plaintiff's Post-Trial Memorandum and Attachments (Defendant's Motion) that Plaintiff's witness Uriarte "did not state that it was an 'established practice' in the payments industry, [to] opine regarding an alleged 'widely held opinion of the industry, or 'cite' examples of companies that would allow for property comparison." (Def's Mot at 3.) The court concurs with Defendant that Plaintiff's post-trial brief incorrectly summarizes Uriarte's testimony. Defendant's Motion is granted.

## I. STATEMENT OF FACTS

Plaintiff "provides client-branded electronic payment solutions" and is an Oregon corporation "headquartered and commercially domiciled" in Oregon. (Stip Facts at 1, ¶ 2, 4.) Uriarte testified, describing Plaintiff's business activity as "the business of providing fraud mitigation and indemnification and payment processing services to telecommunications carriers."

Plaintiff "has numerous revenue streams, but its largest revenue stream stems from facilitating the sale of minutes for prepaid mobile phones and similar mobile telecommunication devices ('recharge' transactions)." (Stip Fact at 1, ¶ 5.) "The majority of the recharge transactions are processed without assistance from the call center using Vesta's systems in an automated fashion ('automated recharge transactions'), for example, by accessing Vesta's interactive voice response system, or by use of previously authorized periodic automatic payments. The revenue streams from the automated recharge transactions are the only revenues at issue." (Stip Fact at 2, ¶ 9.) "In the recharge revenue stream Vesta a) reviews the transaction for potential fraud and b) processes the payment/transaction for its customer." (*See* Ptf's Compl Sec 2 at 2.)

Defendant alleged and DiNicola testified that Plaintiff's "own relevant income-producing activity occurs in Oregon" and revenue originating from the automated recharge transactions is all Oregon source income subject to Oregon taxation. (*See* Def's Pretrial Memo at 4.) Henney testified describing Plaintiff's income producing activity: "Vesta provides [service] as a payment acceptor and processor on behalf of telecommunication companies among other things."

Plaintiff disagreed with Defendant's determination. In its second amended Oregon state excise tax return, Plaintiff concluded that the fees paid to third party payment processors (e.g., American Express, Chase, Amerinet, Discover, etc.) are direct costs defined as costs of performance in Oregon Administrative Rule (OAR) 150-314.665(4)(4) and because the third party payment processors are not located in Oregon, gross receipts generated from the automated recharge transactions should not be sourced and taxed by Oregon. (Ptf's Compl Sec 2 at 2.) Nebel testified about the cost of performance study performed for tax years 2007 and 2008,

referencing Plaintiff's Exhibits 1 and 2 and explaining that automated recharge revenue was sourced based on the location of the third party processors. In response to Defendant's questions, Nebel testified that Plaintiff's payment to the third party processors is a "variable cost" tied to the "revenue generating activity." Nebel testified that for tax year 2008, the "expenses were estimated based on 2007 payment stream." Justice testified about the due diligence Plaintiff performed to determine the location of the third party processors, recalling "day to day" communication with "payment representatives" and responding that he did not know if the third party processors had "redundant locations for servers."

DiNicola and Henney testified that Plaintiff's "credit card transactions are no different than other merchants" who pay for the payment service provided by banks and similar financial institutions, concluding that Plaintiff's payments to third party processors are not "direct costs." Henney defined direct costs as "closely tied and clearly linked to an activity * * * revenue generator" and indirect costs are "costs a company incurs no matter what, e.g. pencils, paper, telephone services, whether revenue produced or not." Henney testified that she concluded that the third party processors "are how Vesta gets paid; it is not what Vesta does to earn income." Henney testified that the payments to third party processors are "administrative costs" similar to payments made to an "outside payroll service."

## II. ANALYSIS

The issue before the court is whether all of Plaintiff's income producing activity, automated recharge transactions, is performed in Oregon, or if Plaintiff's income producing activity is performed both inside and outside Oregon whether "a greater proportion" of Plaintiff's

/ / /

/ / /

income producing activity was performed in Oregon "than in any other state, based on costs of performance." ORS 314.665(4).[1]

Defendant alleges that all of Plaintiff's income producing activity is performed in Oregon. Plaintiff disagrees, stating that none of the activity is performed in Oregon based on costs of performance. Because Plaintiff operates its business in more than one state, Plaintiff's income must be apportioned in accordance with ORS 314.650, stating in pertinent part that "[a]ll business income shall be apportioned to this state by multiplying the income by the sales factor." "As used in ORS 314.650, [] the sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period." ORS 314.665(1). "Sales, other than sales of tangible personal property, are in this state if (a) the income-producing activity is performed in this state; or (b) the income-producing activity is performed both in and outside this state and a greater proportion of the income-producing activity is performed in this state than in any other state, based on costs of performance." ORS 314.665(4).

The wording of ORS 314.665(4) was taken from Section 17 of the Uniform Division of Income for Tax Purposes Act (UDITPA § 17 (1957)). UDITPA was drafted by the National Conference of Commissioners on Uniform State Laws and introduced to the Oregon legislature as HB 1003. It was signed into law on April 9, 1965. Or Laws Ch 152 (1965). UDITPA § 17 was adopted without change and remains unchanged to this date. In 1973, the Multistate Tax Commission (MTC) adopted regulations pertaining to Article IV of the Multistate Tax Compact and UDITPA. OAR 150-314.665(4) substantially follows the MTC regulations, and defines both income-producing activity and costs of performance. Even though there have been numerous

---

[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to the 2007 edition.

efforts to clarify meaning of the UDITPA § 17 and the regulations issued by the MTC, there has been substantial controversy over the meaning of income producing activity and costs of performance, specifically direct costs and indirect costs for service providers in contrast to manufacturers. There have been repeated allegations of ambiguous terms and administrative difficulties.

Against that backdrop, the court's first inquiry is to determine where Plaintiff's income producing activity occurs. ORS 314.655(4) looks at the income producing activity of the taxpayer, whether it is either "performed in this state [ ]" or performed in Oregon and in another state. Defendant promulgated rules defining income producing activity. OAR 150-314.665(4)(2), in relevant part, defines income producing activity:

> "The term 'income producing activity' applies to each separate item of income and means the transactions and activity directly engaged in by the taxpayer in the regular course of its trade or business for the ultimate purpose of obtaining gains for profit. Income producing activity includes transactions and activities performed on behalf of a taxpayer, such as those conducted on its behalf by an independent contractor. Accordingly income producing activity includes but is not limited to the following:

> "(a) The rendering of personal services by employees or by an agent or by an agent or independent contractor acting on behalf of the taxpayer or the utilization of tangible and intangible property by the taxpayer or by an agent or independent contractor acting on behalf of the taxpayer in performing a service."

It is important to note that the inclusion of the activities of independent contractors and agents is a relatively recent addition to the Oregon rule. Prior to January 1, 2008, activities performed on behalf of the taxpayer by independent contractors were excluded from the definition of "income producing activity." ORS 150-314.665(4)(1).

In the matter before the court, the parties agree that the income-producing activity at issue is the processing of individual automated recharge transactions. (Stip Facts at 2, ¶ 9.)

"[Most] of the recharge transactions [that Plaintiff processes are] automated" and occur within a matter of seconds. (*Id*.) The critical core of Plaintiff's argument is that the processing services provided by the payment acquirers are part of Plaintiff's income producing activity and because those activities that total the greatest share of the costs of performing automated recharge transactions take place outside of Oregon, Plaintiff's costs of performance are incurred outside of Oregon and the receipts from those transactions should not be apportioned to Oregon. Plaintiff argues that the payments to the payment acquirers are not payments to agents or independent contractors acting on its behalf; but because payments to third parties "can qualify as costs of performance  * * * that activity must be part of [Plaintiffs'] income producing activity." (Ptf's Post-Trial Mem at 9.)

Plaintiff equates "costs" with "activities," confusing the concepts of income producing activity and costs of performance that is not found in the statute and administrative rule. Defendant correctly states that "[t]he statute and rule focus on the taxpayer's income producing activity—not the activities of third parties who provide services to the taxpayer by doing something that the taxpayer cannot." (Def's Post-Trial Brief at 7.)

In this case, Plaintiff states that "[t]he payment acquirers provide service to Vesta and do not perform any service[s] on Vesta's behalf."[2] (Ptf's Post-Trial Mem at 4.) The payment acquirers perform an activity that Plaintiff cannot and as a result of the service provided to Vesta those activities are not Plaintiff's income producing activity but rather costs of the activity engaged in by Plaintiff. Defendant concludes and the court agrees that Plaintiff's income producing activity occurs in Oregon:

---

[2] It is noteworthy that if Plaintiff were to argue that the payment acquirers were its agents or independent contractors, that argument would create an additional problem:  OAR 150-314.665(4) excluded payments to third parties from "income producing activity" during the 2007 tax year, one of the tax years at issue.

"Vesta's recharge systems are in Oregon. Vesta obtains mobile phone users' payment card information using its systems in Oregon, screens that information for fraud using its systems in Oregon and submits the users' payment card information on to the payment acquirers—all from Vesta's location in Oregon. Vesta therefore incurs its costs of its activity solely in Oregon."

Def's Post-Trial Brief at 9.

"Because Vesta is based in Oregon and Vesta does not identify any other states where Vesta conducts activity for which it incurs a direct cost as part of an automated recharge transaction, Vesta has not met its burden of showing that it engages in income producing activity outside of Oregon."

Def's Post-Trial Brief at 11; *see* Stip Ex 21 at 5 and 6.

In sum the fees Plaintiff pays to the payment acquirers could be characterized as direct costs, but those expenses are direct costs of an income producing activity that Plaintiff performs in Oregon. Plaintiff incurs those costs in Oregon and not in the states in which the payment acquirers are located. The receipts generated by Plaintiff for the automated recharge transactions should be included in the numerator of the sales factors for Oregon state income tax returns filed for tax years 2007 and 2008.

The court's decision results in an outcome that is consistent with UDIPTA's purpose:

"The uniform act exists to ensure that a taxpayer doing business across state boundaries has all of its income taxed, but that no income is taxed twice by different states. *See Twentieth Century-Fox Film v. Dept. of Rev.*, 299 Or 220, 226-27, 700 P2d 1035 (1985) (drafter of UDITPA explained that " '[t]he uniform act, if adopted in every state having a net income tax or a tax measured by net income, would assure that 100 percent of income, and no more or no less, would be taxed' " (quoting William J. Pierce, *The Uniform Division of Income for State Tax Purposes*, 35 Taxes 747, 748 (1957)))."

*Tektronix, Inc. v. Dept. of Rev.* 354 Or 531, 536, 316 P3d 276 (2013).[3]

There is no evidence that Plaintiff is subject to tax in any of the states where the payment acquirers are located. If Plaintiff is not subject to state income tax in any of those states, then

---

[3] Tax practitioners know that theory and reality do not always result in the same taxable income for an entity that does business in multiple states.

apportioning all of the automated recharge transaction receipts to Oregon would not result in Plaintiff paying income taxes on more than 100 percent of that income. In contrast, if Plaintiff were allowed to exclude a portion of those receipts based on the location of the payment acquirers and Plaintiff was not subject to state income taxes in those states[4] where the payment acquirers are located, Plaintiff would be taxed on substantially less than 100 percent of that income.

## III. CONCLUSION

After careful review of the testimony and evidence, the court concludes that Plaintiff's income producing activity, automated recharge transactions, occurs in Oregon. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

IT IS FURTHER DECIDED that Defendant's Motion to Strike [portions as delineated of] Plaintiff's Post-Trial Memorandum and Attachments is granted.

Dated this ＿＿ day of June 2015.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*THIS DOCUMENT WAS FILED AND ENTERED ON JUNE 19, 2015.*

---

[4] Plaintiff witnesses testified that the payment acquirers are located in Florida, Nebraska and Wisconsin. Corporations doing business in those three states are subject to state corporate income tax unless exempt.