## IN THE OREGON TAX COURT
## REGULAR DIVISION

STONEBRIDGE LIFE INSURANCE COMPANY,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4705)

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, filed the Motion for Reconsideration for Defendant (the department).

Scott Schikli, Orrick Herrington and Sutcliffe LLP, Portland, with Michael A. Beckius, Orrick Herrington and Sutcliffe LLP, San Francisco, California, filed the response for the Plaintiff (taxpayer).

Decision for Defendant rendered April 20, 2006.

**HENRY C. BREITHAUPT, Judge.**

### I. INTRODUCTION

This matter comes before the court on a Motion for Reconsideration of the court's earlier order in this case, *Stonebridge Life Ins. Co. I v. Dept. of Rev.*, 18 OTR 423 (2006),

filed by Defendant (the department) under Tax Court Rule (TCR) 80. Plaintiff (taxpayer) filed a response.

## II. FACTS

In *Stonebridge I*, the court held that "the department violated the Due Process Clause of the Fourteenth Amendment in apportioning $12,787,485 of taxpayer's 2003 income to Oregon." 18 OTR at 445. However, the court concluded that, despite the parties' arguments to the contrary, it lacks the authority under ORS 314.670, ORS 314.280, or ORS 317.660 to reapportion taxpayer's income using any method other than that set out in ORS 317.660. *Id.* at 443-44. The court also concluded that it lacks the inherent power to reapportion taxpayer's income. *Id.* at 444-45. Consequently, the court refused to reapportion taxpayer's income as taxpayer had suggested, and instead ordered the department to refund to taxpayer the full amount of income tax it had paid for the 2003 tax year. *Id.* at 444-45.

The department raises four issues in its motion. As noted in taxpayer's response, two of those issues are based on an incorrect reading of the court's order; they merit no further discussion. A third issue involves the nature of the parties' stipulation regarding taxpayer's income from real and tangible property. The department argues that the court misstated the stipulation and then erroneously relied on it in reaching the court's holding. As noted in taxpayer's response, that argument must fail. First, the court stated in its order that the stipulation was not dispositive and that the court would have reached the same result absent the stipulation. *Id.* at 439. Second, the court did not misstate the stipulation. In its order, the court described the stipulation as stating: "The income from Oregon real and tangible property was wholly from the interest received on two loans secured by Oregon property. Neither that income nor the loans was integral or necessary to taxpayer's insurance business in Oregon or elsewhere." *Id.* at 425. The text of the stipulation reads: "The investment in the loans referred to in Paragraph 12, above, was neither integral nor necessary to the insurance business carried on by Plaintiff within and without the State of Oregon." Paragraph 12 states that taxpayer's investment portfolio includes "two loans secured by Oregon property"

and that all of taxpayer's income from real and tangible Oregon property "was interest received with respect to these two loans." The court sees no significant difference in the description of the stipulation in *Stonebridge I* and the text of the stipulation signed by the parties. Accordingly, that issue merits no further discussion.

A fourth issue raised by the department, regarding the court's inherent power to reapportion a taxpayer's income, merits discussion. Both the department and taxpayer urge the court to exercise its inherent equitable power to reapportion taxpayer's income along the lines urged by taxpayer in its Complaint.

## III.   ISSUE

Does the court have the inherent equitable power to reapportion taxpayer's income?

## IV.   ANALYSIS

Under ORS 305.405(3), the court "[h]as and may exercise all ordinary and extraordinary legal, equitable and provisional remedies available in the circuit courts, as well as such additional remedies as may be assigned to it." Neither party contends that the court has been assigned an additional remedy applicable to this case, and no provisional remedy is at issue. Moreover, as the court found in *Stonebridge I*, and as taxpayer agrees, no statutory remedies exist that are applicable to this case because no statute grants the court the authority to reapportion taxpayer's income. The question remains whether the court's equitable powers entail that authority. *See* ORS 305.425(2) (stating that the court's review in cases such as this "shall be an original proceeding in the nature of a suit in equity").

In *Stonebridge I*, the court cited decisions of the United States Supreme Court that "seem to indicate that courts possess an inherent power to adjust an unconstitutional apportionment." 18 OTR at 444. In both *Hans Rees' Sons v. Maxwell*, 283 US 123, 136, 51 S Ct 385, 75 L Ed 879 (1931), and *Norfolk & Western R. Co. v. State Tax Comm'n*, 390 US 317, 330, 88 S Ct 995, 19 L Ed 2d 1201 (1968), the Court implied that further proceedings might lead either to a different resolution of the controversy or to an appropriate

remedy for the constitutional violation.[1] The court found, however, that neither of those cases confirmed an inherent equitable power to reapportion a taxpayer's income.

In their present filings, both parties cite to *McKesson Corp. v. Div. of Alc. Bevs. & Tobacco*, 496 US 18, 40-41, 110 Sup Ct 2238, 110 L Ed 2d 17 (1990) (*McKesson*), in which the Court indicated that states have wide leeway in refunding to taxpayers that portion of a tax that was imposed unconstitutionally. *McKesson* discussed numerous other cases in which the Court had "left state courts with the initial duty upon remand of crafting appropriate relief in accord with both federal and state law." *Id.* at 32. However, as taxpayer admits, the Court never "spoke to the specific authority of State courts to fashion appropriate remedies." For instance, on remand to the Florida Supreme Court, it was the Florida Division of Alcoholic Beverages and Tobacco, and not the court, that proposed a remedy for the unconstitutional taxation of the taxpayer. *Div. of Alc. Bevs. & Tobacco v. McKesson Corp.*, 574 So 2d 114, 115-16 (1991) (*DABT*).

Moreover, *McKesson* involved a situation wholly unlike that now before the court. In *McKesson*, Florida had enacted a discriminatory taxation scheme that unconstitutionally treated McKesson differently and less favorably than its competitors. *McKesson*, 496 US at 31. The Court held that the state had wide leeway to decide whether, as a remedy, it would either (1) grant McKesson "a full refund of its tax payments," (2) refund only "the difference between the tax it paid and the tax it would have been assessed were it extended the same rate reductions that its competitors actually received," (3) "assess and collect back taxes from petitioner's competitors who benefitted from the rate reductions," or (4) adopt a hybrid approach combining elements of the other possible remedies. *Id.* at 39-41. In other words, the state had a choice of either bringing McKesson's tax liability down to the level of

---

[1] In *Stonebridge I*, this court also cited to *NCR Corp. v. Tax Comm'n*, 304 SC 1, 402 SE2d 666 (1991), finding that case of little assistance. The court does, however, take this opportunity to correct its description of that case. In *NCR*, the court ordered the trial court to apply the apportionment formula properly and compare the result to that earlier derived from the misapplication of the formula. *Id.* at 674. The trial court was to apply the new apportionment only if it was grossly different from the old apportionment. *Id.*

its competitors or raising its competitors' tax liability to the level of McKesson. Those levels had been fixed by the legislature. Here, however, the remedy is not so clear. The constitutional violation in this case is not discrimination but subjection of out-of-state value or property to taxation. Taxpayer must be refunded the amount of tax it paid Oregon under the unconstitutional apportionment that was beyond the amount that it fairly should have paid under a constitutional apportionment. The problem in this case is that it is impossible to determine the amount of tax that taxpayer should have paid Oregon under a constitutional apportionment. That amount cannot be measured in terms of any formula or other method provided for by the legislature. That is because the legislature provided for only one method for apportioning taxpayer's income to Oregon: ORS 317.660, which led to an unconstitutional result in this case.

The court finds nothing in *McKesson*, or, more appropriately, any Oregon statute or case, to indicate that the court possesses an inherent equitable power to adjust an unconstitutional apportionment. Neither the references in *McKesson* to the state's initial duty to craft appropriate relief, nor the remand to state courts in *Hans Rees' Sons* and *Norfolk & Western*, implies such a power. At most, the latter two cases confirm that jurisdiction lies with the courts until a case is resolved. Moreover, *McKesson* makes no distinction between the role of the state courts and the role of the other branches of state government; the Court held merely that, somehow, state government, whether one branch or some or all, must provide the appropriate relief. *Cf. State v. Adams*, 339 Or 104, 116 P3d 898 (2005) (stating, with regard to Oregon's speedy trial statutes, ORS 135.745 to 135.750, " 'The state' includes the legislative branch as well as the executive officers who apprehended and prosecuted defendant and the judicial officers who tried him." (Quoting *State v. Adams*, 193 Or App 469, 475, 89 P3d 1283 (2004).)). So long as that relief is provided, the federal constitution is satisfied; which branch of state government takes the lead in providing the relief does not affect the analysis under *McKesson*.

In Oregon, it is the role of the legislature to craft laws, and it is the role of the courts to interpret them. Where,

as here, the legislature has chosen an apportionment formula, such as ORS 317.660, and provided for no deviation from it, the court is bound to follow that choice unless, of course, the choice leads to an unconstitutional result, as it did here. In that event, there can be no tax collected absent a legislatively approved alternative mechanism for imposing taxation. *See* Or Const, Art I, § 32 ("No tax or duty shall be imposed without the consent of the people or their representatives in the Legislative Assembly."). The legislature has chosen not to provide for such a mechanism here, with the exception of the $10 minimum tax required by ORS 317.090.[2] Yet the legislature knows how to provide for other mechanisms, as it has with the equitable allocation provisions of ORS 314.670 and ORS 314.280, under which the department is authorized to approve, permit, or require alternate calculations of tax liability. *See Crocker Equipment Leasing, Inc. v. Dept. of Rev.*, 314 Or 122, 134, 838 P2d 552 (1992) (construing ORS 314.280 as requiring adoption of a taxpayer's proposed alternative apportionment where the taxpayer proves "both that the department's formula is inadequate and that [the taxpayer's] alternative formula is reasonable"). The court lacks the power to reapportion taxpayer's income. The court must therefore do that which *is* within its power to accord taxpayer the relief to which it is entitled: order the refund of all taxes paid under the unconstitutional application of ORS 317.660 except for the $10 minimum tax.

Objecting to the ordered relief, the department argues that the court has in effect reapportioned taxpayer's income, apportioning none to Oregon. The department contends that the court's action is therefore inconsistent with its finding that it lacks an inherent equitable reapportionment power. That argument is without merit. The court reiterates that it did not reapportion taxpayer's income, but instead chose the only remedy available to it upon finding that the only statute defining taxable income as a basis for taxation of taxpayer is unconstitutional as applied. Under the governing statutory framework, the court can neither order the department to reapportion taxpayer's income, nor can it do so itself.

---

[2] Neither of the parties, at any point in this case, raised the issue of the minimum tax. Indeed, the court failed to consider it in *Stonebridge I*. That does not preclude its applicability to this case, however.

Yet the court must grant taxpayer relief. *McKesson*, 496 US at 40-41. The only option left is a full refund except for the $10 minimum tax.[3]

If the above arguments were the only ones before the court, the matter would be at an end. However, both parties raise one final point. Referring to the pleadings, motions, and stipulation of facts in this case, the parties agree that they framed the case such that, if the court found the department's apportionment unconstitutional, then it should order the relief requested in taxpayer's Complaint and described in *Stonebridge I*, 18 OTR at 442-43. The parties argue that the court's resolution of the case, on the other hand, granted taxpayer more relief than that to which it was entitled. In taxpayer's words, the court should treat as "the unconstitutional portion of the tax" the amount requested as a refund. In agreement, the department states that its Answer "admitted that the computation of that requested relief * * * was correct. Moreover, the parties' Stipulation of Facts evidences * * * the parties' agreement that, if the plaintiff prevailed, the tax should be recalculated as shown for the formula modification proposed by plaintiff."

That argument is impossible to harmonize with the statements contained in the parties' filings. In the department's Answer to Amended Complaint, it admitted that taxpayer's proposed recalculation "is a correct statement of plaintiff's position, but [denied] that plaintiff's position is correct." In the Stipulation of Facts, in the paragraph setting forth taxpayer's proposed recalculation, the words the parties used were: "Plaintiff asserts that, rather than applying the apportionment method required by ORS 317.660," the proposed recalculation should be used. Immediately below the proposed recalculation are the words: "Defendant's position is that ORS 317.660 does not allow use of an alternative apportionment formula." Similarly, in its Memorandum in Support of Cross-Motion for Summary Judgment (the memorandum), the department argued that "if the court were to

---

[3] The department's objection was to the full refund, without the $10 minimum tax, ordered by the court in *Stonebridge*. Extending that objection to the court's present order of a full refund except for the $10 minimum tax, the court would come to the same conclusion as it does regarding the original objection.

[hold for taxpayer], any relief given should, to the extent possible, adhere to the formula enacted by the legislature. Plaintiff's proposal that one of the three factors be eliminated in its entirety is far from what the legislature intended in ORS 317.660."

In its Motion for Reconsideration, the department characterizes its earlier statements as merely pointing out that ORS 317.660 does not "allow" use of an alternative apportionment formula. As the department puts it: "The parties did not stipulate that if [taxpayer prevailed] the court could not apply the revised formula as set forth in the Stipulation of Facts. * * * Plaintiff never contended that it did not owe some tax."

The court finds the parties' post-hoc recharacterization of the pleadings and arguments to be unsupported by the documents themselves. Although taxpayer consistently requested, throughout the proceedings, a refund of only $683,635, as calculated by its proposed method of apportioning its income, the department never agreed, until its Motion for Reconsideration, that taxpayer was entitled to that relief. Instead, the department repeatedly and consistently rejected the notion that taxpayer's proposed recalculation could be used to apportion taxpayer's income should taxpayer prevail. That position is perhaps best illustrated by the department's statement in the memorandum to the effect that, should any relief be granted, it should *not* be taxpayer's proposed recalculation. The court finds that at no time before the department's Motion for Reconsideration did both parties contemplate that the court should grant taxpayer the relief it requested should taxpayer prevail.

■　　　Even if the department had taken the position it now claims that it took, that taxpayer is entitled to its requested relief upon prevailing, that fact would make no difference: a reapportionment agreed upon by the parties is a reapportionment nonetheless. It appears to the court that the parties are attempting either to adopt a *Crocker*-like remedy in this case, one which, as stated before, does not apply, or to confer authority on the court by stipulation. Yet no amount of pleading, stipulation, or argument can confer upon the court the authority to reapportion taxpayer's income. As stated above,

that power is for the legislature to grant. Even were the court to possess the authority to reapportion taxpayer's income absent a grant of power from the legislature, any such authority would be discretionary, and the court would not exercise it in a case such as this.

In summary, the court lacks the inherent equitable power to reapportion taxpayer's income. Moreover, neither the pleadings nor the arguments advanced by the parties in this case prior to the department's Motion for Reconsideration contemplated an agreed upon resolution should taxpayer prevail. Even if they had, the court would be powerless or would refuse to grant any relief other than a full refund except for the $10 minimum tax. At this point, the parties have before them an order of this court requiring the department to refund to taxpayer $767,008, plus statutory interest. The court now modifies that order to require the department to refund to taxpayer $766,998, plus statutory interest. It goes without saying that nothing prevents the parties from settling this case in a manner that will result in taxpayer receiving from the department a refund of only $683,635. But it must be said that any such settlement will not come by order of the court.[4]

The court finds it important to emphasize what it is *not* holding. The court is not holding that the legislature is powerless to grant the court the authority to reapportion a taxpayer's income in cases such as this. Indeed, ORS 305.405(3) contemplates that the legislature might assign to the court special remedies. Additionally, the legislature remains free to graft onto ORS 317.660 an equitable allocation provision similar to ORS 314.280 and ORS 314.670. Such a provision would allow the court, in cases such as this, to adopt the taxpayer's proposed alternative apportionment. *See Crocker*, 314 Or at 134 (so doing under ORS 314.280). Alternatively, the legislature could pass a law that would

---

[4] Indeed, the parties' agreement as to the appropriate remedy in this case raises the issue of justiciability because there might no longer be "actual and substantial controversy between the parties having adverse legal interests." *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982). The court concludes that it does have jurisdiction over this reconsideration motion because the court had jurisdiction over the underlying dispute, in which the parties disagreed as to the constitutionality of the application of ORS 317.660 to taxpayer.

allow the court to order the department to reapportion a tax-payer's income. None of those provisions now exists, how-ever, and the court is bound to apply the law that does exist. That is why the court cannot reapportion taxpayer's 2003 income.

## V.   CONCLUSION

Based on the foregoing reasons, the court concludes that it lacks the inherent equitable power to reapportion tax-payer's income, but that taxpayer does owe the $10 minimum tax of ORS 317.090. Now, therefore,

IT IS ORDERED that Defendant's Motion for Recon-sideration is granted; and

IT IS FURTHER ORDERED that, in lieu of the refund ordered by the court on February 22, 2006, Defendant shall refund to Plaintiff $766,998, plus statutory interest.

Costs to neither party.